ALLUWEE OIL CO. v. SHUFFLIN *et al.*

No. 1811.  Opinion Filed May 14, 1912.

(124 Pac. 15.)

INDIANS — Lease by Allottee — Enforcement — Evidence.  C., a full-blood Cherokee allottee, executed an oil and gas lease in favor of A., a corporation.  Later the allottee executed a lease of the same lands to S. & B.  The Secretary of the Interior approved the lease to S. & B., and disapproved the one to A.  S. & B. went into possession of the land under their approved lease, prospected it, and developed oil in paying quantities.  A. then brought suit in the district court to have S. & B. declared trustees of and as holding the approved lease in trust for the benefit of A.  **Held,** that the evidence in the case fully sustained the finding of the

trial court that A.'s petition was without· equity, and that, under the law and evidence, it was not entitled to the relief sought.

(Syllabus by Brewer, C.)

*Error from District Court, Nowata County;*
*T. L. Brown, Judge.*

Action by the Alluwee Oil Company against Michael B. Shufflin and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. A. Chase* and *W. H. Kornegay,* for plaintiff in error.

*W. D. Humphrey* and *Geo. S. Ramsey,* for defendants in error.

Opinion by BREWER, C. This is a suit to declare a resulting trust in a departmental oil lease of certain lands.

The cause was tried July 2, 1909, in the district court of Nowata county by the court, who made special findings of fact, and rendered a decree in favor of defendants. Motion for new trial was filed, overruled, exceptions saved, and the cause is here for review of the alleged errors set out in such motion.

The plaintiff in error, who will hereafter be called plaintiff, set up in its petition in error 24 specific assignments of error. These assignments are not treated separately by counsel in the brief, however; nor shall we treat them separately here. The errors alleged are all directed to the findings of the court and the alleged want of evidence or sufficiency of the evidence to support the findings, and that the findings were contrary to the law and the evidence.

The facts out of which this controversy arose are substantially as follows: Susan Connor is a full-blood Delaware Indian and a citizen of the Cherokee Nation. There was allotted to her the S. E. ¼ of section 34, township 27 N., range 16 E. In July, 1905, the allottee leased to defendants Shufflin & Brown 60 acres of this allotment, which lease was approved by the Secretary of the Interior, and which is not directly involved here, but which has some bearing on the case. That at the time of mak-

ing the above lease the allottee entered into a written contract with defendants, agreeing that, if defendants should develop oil or gas on the 60 acres leased to them, she would then lease to them, for an increased bonus of $1 per acre, the remaining part of her allotment, including therein the land in controversy. That defendants prospected the 60 acres of land leased to them, and discovered oil in paying quantities.

The lease to defendants on the first 60 acres, made in July, 1905, was not approved by the Secretary of the Interior until June, 1906, and defendants began drilling operations on it about August 15, 1907, and in a few days found oil. Upon finding oil, defendants went to the allottee for a lease on the remainder of her allotment, under the terms of the written contract to give same, and on September 16, 1907, procured from the allottee a lease on the S. E. ¼ of the S. E. ¼ and the N. ½ of the N. W. ¼ of the S. E. ¼ of section 34, township 27 N., range 16 E., the same being the land in controversy, paying as a bonus $30 an acre to the allottee. This lease was later, December, 1908, approved by the Secretary of the Interior. After the defendants had obtained the first lease and the written contract in July, 1905, to wit, on March 26, 1907, the plaintiff, Alluwee Oil Company, procured from the allottee her signature to a lease of the lands in controversy, agreeing to pay her a bonus of $10 per acre. It actually paid her nothing, but left a check at a bank in Nowata for the bonus, payable to her, on condition that no other leases or incumbrances were on the land. She never received the check or its proceeds, but later went to town and tried to lease the land to other parties, not defendants, and an attorney, not shown to have had any business relation with defendants, found out about the attempt to lease to plaintiff. This attorney was then employed by the allottee to protest and contest, before the department, the approval of the plaintiff's lease. This contest between the allottee and plaintiff over the approval of plaintiff's lease was first submitted to a local representative of the department, who heard evidence thereon at Nowata, September 10, 1907, and whose findings were against the

allottee. During the period of this contest, plaintiff sent the allottee a draft for $600 to cover the bonus to be paid under its lease contract; but the allottee returned the draft. The lease of plaintiff and the lease of defendants were both in due course filed in the Indian agent's office at Muskogee, and appear to have been sent together to the Department of the Interior for consideration and action.

On December 11, 1907, the acting Commissioner of Indian Affairs referred the leases of both plaintiff and defendants to the Secretary of the Interior, recommending that plaintiff's lease be disapproved, and that defendants' lease be approved. On December 12, 1907, the Assistant Secretary of the Interior approved defendants' lease and disapproved the lease of plaintiff. And on December 28, 1907, he wrote the Commissioner of Indian Affairs the following opinion and decision regarding the conflicting leases of plaintiff and defendants:

"Department of the Interior, Washington, December 28, 1907. The Commissioner of Indian Affairs—Sir: In the matter of conflicting oil and gas mining leases, Susan Connor to Alluwee Oil Company and to Shufflin & Brown, concerning which you wrote under date of December 11, 1907: Lessor, a full-blood Cherokee woman, on March 26, 1907, signed a lease to said Alluwee Oil Company, by the terms whereof she was to receive a royalty of 12½ per cent. and a bonus of $600. The lease form was that prescribed for Indians other than full bloods. The bonus was not paid, but was left, in the form of a check, with a certain bank, to be given to lessor when lessee was satisfied that there was no other lease of the premises, and upon her execution of the affidavit before a. United States commissioner. Thereafter she protested against the approval of this lease, alleging that she was not acquainted with its contents and did not understand that she was executing an oil lease, and that she had not received the bonus promised. A hearing showed that she did understand that she was making an oil lease, and that she was not unacquainted with the terms. It also showed that she had not received the bonus, because she had refused to execute the affidavit before the United States commissioner, as required by the regulations. On September 16, 1907, she executed the lease to Shufflin & Brown, the terms of which call for a royalty of 12½ per cent. and a bonus of $1,800. The Alluwee Oil Com-

pany, however, has since increased its offer of bonus to $1,800. It further appears that, after the representative of the Alluwee Oil Company had secured lessor's signature to the lease aforesaid, certain changes therein were made, probably to make it conform to the requirements prescribed in a lease from a full blood. It cannot be determined from the evidence who caused these changes to be made; lessor was certainly not advised, and lessee disclaims any knowledge. It is your opinion that these changes are immaterial. Whether they are is a matter more properly within the lessor's right to determine. Certain it is that the instrument now presented is not the instrument which she signed. No person had any authority from her to make these interlineations and verbal modifications. The lease which she signed was not such a lease as the rules of this department, nor the statute upon which they are based, authorizes her to sign. In other words, had the lease been presented for approval without these unauthorized modifications, it was not a lease such as the department would approve, without violence to its own regulations. For one thing, the blank used by lessee did not call for acknowledgment of its execution before a notary public, although regulations then in force so required in the case of a full blood. Nor was this latter defect remedied in the attempt, by use of a pen, to adapt the already signed lease to the form prescribed for full bloods. The changes to which it is not pretended that lessor assented certainly did not convert an improperly executed and voidable instrument into one which the department may now approve, particularly in the face of lessor's objection. The department, therefore, concurs in your recommendation that the said lease be disapproved. The lease to Shufflin & Brown is hereby approved, subject to the regulations of June 11, 1907, as amended October 14, 1907. The papers are returned. Very respectfully, Frank Pierce, Acting Secretary."

It is conceded in the pleadings and briefs that a valid lease of this nature could only be made with the consent and express approval of the Secretary of the Interior. The provision of law applicable is section 20 of an act of Congress, approved April 26, 1906, c. 1876, 34 Stat. 145, as follows:

"That after the approval of this act all leases and rental contracts except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek and Seminole Tribes shall be in writing and subject

to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval."

The plaintiff for its cause of action, after alleging the execution by the allottee of its lease and its attempt to obtain the approval of the Secretary of Interior thereto, states as the gravamen of its case the following:

"That thereafter these defendants discovered that plaintiff had procured said lease from said Susan Connor, and that the same was pending before the Secretary of the Interior for approval; and that said defendants conspired together to prevent the approval of said lease by the Secretary of the Interior, and also conspired together to secure a similar lease from the said lessor, and to secure the approval of the Secretary of the Interior on their said lease. That, pursuant to said combination, these defendants did secure from said Susan Connor, on September 16, 1907, an oil and gas lease, a copy of which is hereto attached and made a part hereof and marked 'Exhibit B.' That by reason of the said combination, and by reason of the acts of these defendants, with full knowledge of the plaintiff's rights in the premises, the plaintiff was not able to secure the approval by the Secretary of the Interior of its said lease, but that the Secretary of the Interior did approve the lease to the defendants, and has actually delivered the same to the defendants. That by reason of the fact that the defendants, with full knowledge of the plaintiff's right in the premises, succeeded in getting for themselves that which rightfully belong to the plaintiff, the plaintiff, in equity and good conscience, is entitled to said lease."

The petition concludes with prayer that defendants be held to hold their approved departmental lease as trustees for the plaintiff, etc.

Treating the petition as having stated a cause for equitable relief, which, however, is very doubtful, but does not call for decision, it becomes necessary to determine the rules of law and equity applicable to the case. It is clear that the purpose of the suit is to have the holders of the legal title to the approved oil and gas lease declared trustees, holding same for the benefit of the holders of the disapproved lease, because of the alleged superior equities of the last-named parties. It being admittedly the law that the approval of the Secretary was indispensable to impart validity to either lease, and that upon such

approval the legal right to take oil and gas from the lands for a fixed period was complete in the holders of such approved lease, we are led to the conclusion that the general rules and principles of equity applied to the holders of patents to public lands in cases where another asserts a superior equitable right to such lands, whereby the patent should have issued to him, are applicable and govern here.

Under the rules announced in such cases, it is well established that if the officers of the Land Department are induced to issue a patent to the wrong party by an erroneous view of the law, or because of a gross or fraudulent mistake of the facts, the rightful claimant has a remedy, and may avoid the decision of the Land Department and charge the legal title of the patentee with his equitable right to it, either upon the ground "that, upon the facts found, conceded, or established, without dispute, at the final hearing before the department, its officers fell into a clear error in the construction of the law applicable to the case, which caused them to issue the patent to the wrong party; or that, through fraud or gross mistake, they fell into a misapprehension of the facts proved before them, which had the like effect." *Garrett et al. v. Walcott,* 25 Okla. 574, 106 Pac. 848; *Baldwin v. Keith,* 13 Okla. 624, 75 Pac. 1124; *James v. Germania Iron Co.,* 107 Fed. 597, 46 C. C. A. 476; *Wallace v. Adams,* 143 Fed. 716, 74 C. C. A. 540; *Gonzalees v. French,* 164 U. S. 338, 17 Sup. Ct. 102, 41 L. Ed. 548.

In this case the plaintiff and defendants had no dealings, concerning this land and the leases, with each other, and no relation between them is pleaded or proven, out of which equities could arise. And therefore authorities relevant where equities have arisen between the claimants out of their own transactions concerning the subject-matter are not in point, and will not be reviewed.

It is not claimed in the petition or shown by the proof that the plaintiff's lease was such a one as the Secretary ought, as a matter of law, under the rules and regulations of his department, to have approved. The decision of the Secretary specifi-

cally holds that it is not such a lease. It is not claimed in the petition or shown in the proof that plaintiff has parted with the consideration named in the lease, or that the allottee accepted same; but the proof shows that it was offered her by plaintiff, and that it was refused by the allottee. Plaintiff's claim, then, is left to stand on the alleged fraud of defendants in procuring the approval of their lease and defeating the approval of plaintiff's lease. No specific act of fraud is either pleaded or proven. It is stated in the petition that the two defendants "conspired together" and entered into a "combination" to defeat the approval of plaintiff's lease and secure the approval of their own; but just how and what they did in fraud of plaintiff's rights has not been made to appear, further than that at the hearing of the contest between plaintiff and the allottee defendants had an attorney present watching the proceedings. This was not fraudulent; nor does it seem to us to have been even subject to criticism, under the facts and circumstances. The defendants made the first written contract with the allottee to lease this land long before plaintiff became concerned in the matter. It is true that under the law this contract was invalid and could not be enforced; but the plaintiff's lease, or attempted lease, was equally invalid without the approval of the Secretary. Plaintiff relies on this invalid lease to support its alleged equities. If this can be done, do not similar equities arise out of defendants' written contract for a lease?

The court, after considering all the evidence, found that the lease presented to the Secretary for approval was not in conformity to the rules and regulations of the Department of the Interior, and was therefore not a lease that could be approved; that the lease was faulty in that it was not in the form prescribed for full-blood lessees; that it was lacking in an acknowledgment required in such cases; that the sworn statement of the allottee, known as a bonus affidavit, was lacking; that the affidavit required, showing the allottee to be familiar with the terms of the lease, was lacking. The court further found that the contest between the allottee and plaintiff over the ap-

proval of its lease was instituted without the knowledge or consent of defendants; that defendants, upon the approval of their lease, had entered upon the land and developed same, without an objection or assertion of any claims by plaintiff until after the value of the property had been proven. The court further found that the rights of defendants were acquired before the recording of plaintiff's lease in the county wherein the lands are situated; and that such rights were acquired without sufficient notice, either actual or constructive, of the claims of rights and equities on the part of plaintiffs. The court further found that after the execution of plaintiff's lease the same had been materially altered or changed, without the knowledge or cor-sent of the allottee. The court concluded its specific findings of fact with the general one that "the court finds no equity in the plaintiff's petition, and also finds that under the law and the testimony the plaintiff is not entitled to the relief prayed for." We have examined the evidence, and think that all the material findings of fact are sufficiently supported thereby. Indeed, we believe the equities preponderate in favor of the defendants.

There being no claims here that the department fell into an error of law, plaintiff's case must rest upon the ground that, "through fraud or gross mistake, it fell into a misapprehension of the facts," etc. Under this ground, the measure of proof has been stated very clearly by Judge Sanborn, in *James v. Germania Iron Co.,* 107 Fed. 601, 46 C. C. A. 479:

"If he would attack the patent on the latter ground, and avoid the department's findings of fact, however, he must allege and prove, not only that there was a mistake in the finding, but the evidence before the department from which the mistake resulted, the particular mistake that was made, the way in which it occurred, and the fraud, if any, which induced it, before any court can enter upon the consideration of any issue of fact determined by the officers of the department at the hearing. *United States v. Northern Pac. R. Co.,* 95 Fed. 864, 870, 882, 37 C. C. A. 290, 308; *United States v. Atherton,* 102 U. S. 372, 374, 26 L. Ed. 213; *United States v. Budd,* 144 U. S. 154, 167, 168, 12 Sup. Ct. 575, 36 L. Ed. 384; *United States v. Mack-*

*intosh,* 85 Fed. 333, 336, 29 C. C. A. 176, 179, 56 U. S. App. 483, 490; *United States v. Throckmorton,* 98 U. S. 61, 66, 68, 25 L. Ed. 93; *Marques v. Frisbie,* 101 U. S. 473, 476, 25 L. Ed. 800; *Steel v. Refining Co.,* 106 U. S. 447, 451, 1 Sup. Ct. 389, 27 L. Ed. 226; *French v. Fyan,* 93 U. S. 169, 172, 23 L. Ed. 812; *Ehrhardt v. Hogaboom,* 115 U. S. 67, 69, 5 Sup. Ct. 1157, 29 L. Ed. 346; *Heath v. Wallace,* 138 U. S. 573, 575, 11 Sup. Ct. 380, 34 L. Ed. 1063; *Barden v. Railroad Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992."

The plaintiff in error cites and relies on as authority the equitable doctrine announced in Pomeroy's Work on Contracts, under a discussion of the question of the specific performance of contracts for the sale of land, and quotes section 465, at page 530 of that work, as follows:

"Sec. 465. The doctrine is well settled that when the vendor, after entering into a contract of sale, conveys the land to a third person, who has knowledge or notice of the prior agreement, or who does not part with a pecuniary consideration, or who, for any other reason, is not a *bona fide* purchaser for value, such grantee takes the land impressed with the trust in favor of the original vendee, and holds it as trustee for such vendee, and can be compelled, at the suit of the vendee, to specifically perform the agreement by conveying the land in the same manner, and to the same extent, as the vendor would have been liable to do, had he not transferred the legal title," etc.

The rule announced, however, presupposes the absolute right in the vendor to sell the land and to make binding contracts for its sale, and obviously is not applicable in the present case. Besides, counsel has overlooked the fact that this statement of the rule is predicated on the assumption, stated near the close of the preceding section, that the subsequent grantee is not a *bona fide* purchaser for value.

Counsel has further failed to give proper force to two other rules stated in the section preceding the one he quotes.

"First: 564. * * * Where the equities of two or more conflicting claimants to the same subject-matter are equal in all respects, the one which is prior in point of time shall prevail; secondly, the rule that, where the equities of two or more claimants to the same subject-matter are otherwise equal, the one who

has, in addition to his equitable interest, obtained the legal title must prevail."

The other authorities cited are cases where the owner of lands, with full right to dispose of them, has made a contract for their sale, enforceable in an action for specific performance, and has, after making such enforceable contract, conveyed the legal title to another.

We have not examined, and do not pass upon, the question as to whether the action of the Secretary of the Interior, in approving an oil and gas lease, can be avoided by the courts, and a resulting trust declared. We have passed on the facts adduced in this case on the theory upon which it was tried.

We have examined the entire record, and have no doubt but that the judgment of the court is fully sustained by the law and the evidence.

The judgment of the court should therefore be affirmed.

By the Court: It is so ordered.