## SUMMERS v. BARKS *et al.*

No. 2181.   Opinion Filed October 15, 1912.

Publication Withheld Until December 16, 1912.

(127 Pac. 402.)

1.  **INDIANS—Lands—Allotments—Vacation.** If the Commission to the Five Civilized Tribes, the Commissioner of Indian Affairs, or the Secretary of the Interior have been induced to award an allotment certificate to the wrong party by reason of an erroneous view of the law, or by a gross or fraudulent mistake of the facts, the rightful claimant may, in a court of equity, cause such decision to be avoided and charge the legal title to the lands in the hands of the allottee with his equitable right to it upon the ground that, upon the facts found, conceded, or established without dispute at the hearing, before the special tribunal, its officers fell into error as to the law applicable to the case, which caused them to refuse to have issued the patent to him and give it to another or through fraud or gross mistake it fell into a misapprehension of the facts proved before it, which had a like effect.

2.  **SAME.** Record examined, and held, that no such erroneous view of law was had and no gross or fraudulent mistake of the facts occurred in this case as would authorize this court to interfere

---

Summers v. Barks et al.

---

with the decision and judgment of the Secretary of the Interior, the Commissioner of Indian Affairs, and the Commission to the Five Civilized Tribes.

(Syllabus by Robertson, C.)

*Error from District Court, Craig County;*
*T. L. Brown, Judge.*

Action by Mary Summers against John E. Barks and others to declare a resulting trust and for other purposes. Judgment for defendants, and plaintiff brings error. Affirmed.

*W. H. Kornegay,* for plaintiff in error.

Opinion by ROBERTSON, C. This action was begun in the United States Court for the Northern District of the Indian Territory on June 22, 1907, by Mary Summers against Victoria Barks to cancel an allotment certificate and to declare a resulting trust, etc. In the complaint it is alleged, in substance, that plaintiff is a citizen of the Cherokee Nation, with all the rights of a citizen of said nation by blood, having been admitted to citizenship under the provisions of the treaty made between the Cherokee Nation and the Shawnee Tribe of Indians in 1866; that she resides in the Northern District of the Indian Territory, and on the land in controversy, and that she has been in possession of the same for 25 years last past; that she has during her occupancy of the same placed lasting and valuable improvements thereon, consisting of houses, fencing, wells, tillage, and orchard, to the value of $1,200; that the value of the land, exclusive of the improvements, is $2,000; that at the time of the passing of the so-called Curtis Act (Act June 28, 1898, c. 517, 30 St. at L. 495), on June 28, 1898, she was in the exclusive possession of the land, and was using the same as a home, and that she was in possession of the same on August 7, 1902, and intended to take the same as her individual allotment; that on February 2, 1903, the defendant Victoria Barks, by and through her husband, John E. Barks, made application to the Commission to the Five Civilized Tribes to have the land allotted to her, and the said commission did allot the same land to said Victoria Barks; that at said time said Victoria Barks was not in possession of said land, did not own

any of the improvements thereon, and was not entitled to the possession thereof; that thereafter on April 1, 1903, plaintiff filed an application to allot the land in question to her, and the said commission refused to do so, and upon such refusal she instituted a contest for said land; that said contest was decided against her by the said commission; that thereafter she took said cause, by appeal, to the Commissioner of Indian Affairs, where the decision of the commission was affirmed, and thereupon she appealed to the Secretary of the Interior, who sustained the action and judgment of the Commissioner, and that by virtue of said decisions a certificate of allotment was issued to said Victoria Barks, who now claims to be the owner of said land.   She now comes into a court of equity, and asks for a review of her claims, and that the decision of the Secretary of the Interior be reversed, and that said Victoria Barks be decreed to be a trustee to hold said land in trust for plaintiff; that said trustee be ordered to convey said land to plaintiff; that a decree be entered vesting the title to said land in plaintiff; that all judgments, orders, and decisions of the Commission to the Five Civilized Tribes, the Commissioner of Indian Affairs, and the Secretary of the Interior, in so far as they undertake to divest plaintiff of her right to allot said land, be canceled, set aside, and held for naught; and that defendant and all parties claiming under her be forever enjoined from in any manner interfering with plaintiff's possession of said land, and for other equitable relief.   Defendant on December 14, 1907, answered, admitting that she had the certificate of allotment to said land, and claimed that she obtained the right to allot said land by the purchase of the improvements thereon from the plaintiff, and denied all the other material allegations of the complaint.   Before trial Victoria Barks died, and the cause was revived in the name of John E. Barks, as the administrator with the will annexed, and John E. Barks personally, and Willie H. Barks, Grace E. Barks and Miles Mathew Barks, heirs of Victoria Barks.

On the issues thus joined, the cause was tried to the court and resulted in a judgment for defendants and against the plaintiff, who brings this appeal to reverse said decree.   Many assignments of error are urged by plaintiff in error in his brief,

the most of which, however, we are precluded from examining into by the adjudicated cases. The entire record, including all the evidence taken before the commission, is presented by the case-made, and we are asked to examine into the facts and to say that the commission, by gross or fraudulent mistake of fact, or by an erroneous view of the law applicable thereto, was induced to render its decision against plaintiff and in favor of the contestee. Plaintiff has a right to ask this, and this court has power and jurisdiction to examine the record with this end in view. *Garrett v. Walcott,* 25 Okla. 574, 106 Pac. 848. To this end, we have carefully read and reread the entire record. We have also examined the findings of fact and the conclusions of the commission thereon, together with the corrections thereof, as made by the commission on contestant's motion for review, and after a careful consideration of the facts, aided by the elaborate brief of counsel, we are of the opinion that the commission reached the proper conclusion, and that its judgment was correct. Counsel attempts to raise objection to the methods of procedure employed by the commission, and argues that the constitutional rights of his client have been ruthlessly invaded by permitting a contest clerk to take the testimony at the hearing before the commission. This is the first time in the history of the case that this objection has been made. It was not made at the hearing before the commission, or before the Commissioner of Indian Affairs, or before the Secretary of the Interior. We do not believe there is any merit to this objection. Counsel has pointed out no specific harm which has accrued to his client by such procedure, nor does he aver that any different result would have been attained had the entire commission heard the witnesses testify. The findings and conclusions and judgment are duly signed by the individual members of the commission, and we cannot permit such a judgment to be thus impeached, especially in the absence of a charge of fraud or gross mistake of fact, predicated upon such objection.

The various questions raised by counsel for plaintiff in error in his brief (with the exception of one or two of minor importance, and which deserve no consideration at our hands) re-

quire a minute examination of the evidence. As hereinbefore stated, we have read with care the entire record, as well as the amended findings of fact of the Commission to the Five Civilized Tribes, and it makes no difference who prepared this finding, whether a contest clerk, as argued by plaintiff in error, or whether the commission itself, for truthfulness and comprehensiveness, it cannot be surpassed, and we are constrained to, and do hereby, adopt the same as our own finding of fact, after a careful examination of the entire testimony.

Such parts thereof as are of value to a correct determination of the questions involved are as follows:

"Mary Summers, at the time of the execution of the bill of sale to Victoria and J. E. Barks, had the possessory title to about 700 acres of land. Her children each had places of their own, and the 700 acres of Mary Summers can in no way be confused with the holdings of the children. The family appear to be reasonably prosperous. The evidence shows that Barks and his wife had heard that Mrs. Summers wished to dispose of a part of her holdings. They went to see her on Friday or Saturday, and remained until the following Monday, when the bill of sale was executed. They camped out on the George Summers place, where Mrs. Summers was then staying. They went to buy lands on which they wished to allot. This was their sole purpose in going, and the negotiations resulting in the purchase as detailed by Barks and his wife appear to the commission as much more reasonable than those detailed by Mary Summers. The improvements on Mary Summers' place are variously estimated at from $1,500 to $2,500. Mr. Lindsay, a son-in-law of Mrs. Summers, who has been more or less active in the prosecution of this contest, estimates the improvements to be worth about $1,500. Mr. Lindsay resided near the place, and is shown to be well acquainted with the improvements thereon, and his opinion as to the value would have more weight with the commission than that of any other witness testifying as to that particular point, and it is not believed that he would have underestimated their value. The fact that the improvements on the land were sold by Mrs. Summers for less than their actual value, as well as the fact that she accepted unsecured notes in payment therefor, may be, and is, considered by the commission in arriving at a proper determination of the rights of the parties in this consolidated case. Such matters are material, and can be introduced in evidence to show that the party making the same for an inadequate con-

sideration and accepting unsecured notes in payment was not competent to make a valid contract. Ordinarily such facts would have great weight with a court in arriving at a decision, but in this case other matters must be considered with relation to the sale for an inadequate price, etc.

"Mary Summers at the time she sold to contestee was in possession of about 700 acres of land. She could select but one allotment therefrom, as all of her children were adults, and had places of their own. She undoubtedly believed she was holding much the greater part of all the land in her possession unlawfully; that she was an excessive holder, made so by the Curtis Act. 30 St. at L. 495. Believing this, she proposed to sell her excess. To save as much as possible while she had a chance was undoubtedly her intention at the time she sold to Barks. More than four-fifths of the land held by her was, under the then existing law, unlawfully held. She was doing what hundreds of other citizens had done, and were then doing. If the fact that an excess holder had disposed of his holdings for less than their actual value could be considered in the Indian Territory, to show incompetency and the ordinary weight given to such evidence, a great many sales would be nullified. Mary Summers, although 55 years old when the sale was made, had added to her holdings since the death of her husband until they were then much more extensive and much more valuable. Her incompetency is not shown by the evidence. It is shown only by contestants' brief. The commission can see no reason to change its former finding.

"The commission is still of the opinion that Victoria and J. E. Barks exercised no undue influence over Mrs. Summers, and that none of their acts were fraudulent. If Mrs. Summers is, as the commission finds, competent to contract, the actions of the Barks are above suspicion. Their acts appear fair and honorable in every respect. The question of purchase was discussed with Mrs. Summers herself, with two of her children, with one of her sons-in-law, and with one of the tenants on the place. If Mrs. Summers did not have capacity to contract, this was the proper time to object to her disposing of the place. The testimony indicates strongly that the noncitizen tenant was the first to object to the sale after execution of the bill of sale. The last exception taken by contestants, as detailed herein by the commission, is the only one which the commission considers to be in any degree well taken. Did, or did not, Mary Summers deliver the bill of sale to Victoria and J. E. Barks on the condition precedent that they secure the consent and signature of all of the children to said bill of sale?

"The question may be asked, providing it was not so delivered, Why did Barks, after securing the signature of Mary Summers, the mother, attempt to secure the signatures of all of the children to the bill of sale, and, in fact, did secure the signatures of three of them? The evidence shows that all of the children were adults, that the land in controversy was considered the mother's place, and was so recognized by the children. It is further in evidence, though, that a part of the Mary Summers' property was improved by the husband of Mary Summers and herself. In this property, at least, the children at one time had an interest. Whether this interest had been abandoned at the time of the sale to Victoria and J. E. Barks, or whether the children intended claiming same at some future time, need not be discussed as the interest of the children is not before the commission. It was perfectly proper for Barks to secure the release from said children. This he attempted to do, and received releases from three of the children.

"The commission, after a careful review of all of the evidence, is of the opinion that at the time Mary Summers disposed of her interest in the land in controversy to Victoria and J. E. Barks she was fully competent to make a valid contract; that the negotiations leading up to the execution of the bill of sale itself were open and aboveboard, and no undue influence or fraudulent methods were used in securing same; that the sale was made after deliberation and consultation with two of her children; that the bill of sale was absolute in its nature and conveyed all of the interest of Mary Summers in the land; that delivery of same was complete; that the securing and attempt to secure the signatures of the children of Mary Summers was not made in fulfillment of a condition precedent to the delivery of the deed, but to secure a release of any right, or pretended right, which said children might have in the land, and therefore will deny the motion."

If the Commission to the Five Civilized Tribes, the Commissioner of Indian Affairs, or the Secretary of the Interior have been induced to award an allotment certificate to the wrong party by reason of an erroneous view of the law, or by a gross or fraudulent mistake of the facts, the rightful claimant may in a court of equity cause such decision to be avoided, and charge the legal title to the lands in the hands of the allottee with his equitable right to it upon the ground that, upon the facts found, conceded, or established without dispute at the hearing, before the

special tribunal, its officers fell into error as to the law applicable to the case, which caused them to refuse to have issued the patent to him and give it to another or through fraud or gross mistake it fell into a misapprehension of the facts proved before it, which had a like effect.

Counsel for plaintiff in error, not having pointed out any gross or fraudulent mistake of fact, and there being nothing in the record to show that the Commission to the Five Civilized Tribes, the Commissioner of Indian Affairs, or the Secretary of the Interior, or either of them, or the learned trial judge in the court below, misapplied or misconstrued the law applicable to the facts of this case, the judgment of the district court of Craig county should be affirmed.

By the Court: It is so ordered.