## HILL v. BURNETT.

No. 8078—Opinion Filed Jan. 8, 1918.

(169 Pac. 1120.)

**1. Appeal and Error—Settlement of Case-Made—Dismissal of Appeal.**

Where it is agreed that the case-made may be settled and signed by the judge at any time it may suit his convenience, such agreement necessarily authorizes the settling and signing of the case-made prior to the expiration of the time fixed for suggesting amendments, and an appeal will not be dismissed where the case-made is settled and signed—when there is such an agreement—prior to the time fixed for suggesting amendments.

**2. Indians — Allotment — Contest—Sufficiency of Petition.**

Where the action of the Secretary of the Interior is attacked in deciding a contest of an allotment, and in awarding a patent to allotted land, unless the averments of the petition in such action make it clearly appear that the Secretary of the Interior has made "a gross mistake of facts," or has committed some material error of law, or fraud was practiced upon him by the successful party, such petition fails to state a cause of action, and a demurrer thereto, upon such grounds, was properly sustained.

**3. Same.**

The petition in this case carefully examined, and held not to state facts sufficient to constitute a cause of action in favor of plaintiff and against the defendant.

(Syllabus by Collier, C.)

Error from District Court, Washington County; R. H. Hudson, Judge.

Action by Alfred Dodge Hill, a minor, by Frank L. Hill, his guardian, against William James Burnett, a minor, by Bates B. Burnett, his guardian. Judgment for defendant, and plaintiff brings error. Affirmed.

W. A. Chase, Preston C. West, Roger S. Sherman, and A. A. Davidson, for plaintiff in error.

Smith & Walker and Burford, Robertson & Hoffman, for defendant in error.

Opinion by COLLIER, C. This action was brought by plaintiff in error against defendant in error, and involves the correctness of a decision by the Department of the Interior relative to a contest of an allotment of land in the Cherokee Indian Nation, and the award of a patent to the land in controversy. Hereinafter the parties will be designated as they appeared in the trial court.

We are first met with a motion to dismiss this appeal, upon the ground:

"That the case-made was settled and signed prior to the expiration of the time fixed for suggesting amendments, and that the defendants had not waived the right to suggest amendments, and were not present when the case-made was settled and signed."

The defendants acknowledge due and legal services, and—

"waived notice of the time and place of the presentation of the above and foregoing case-made to the judge of the district court, before whom said cause was tried for settlement and signing, and hereby agree that said case-made may be presented to the judge for settlement and signing, and be settled, signed, and allowed by said judge at any time when it may suit his convenience to do so."

It is contended by attorneys for defendant that this waiver was not a waiver of the time in which to suggest amendments, and with this contention we cannot agree. The agreement "that the judge might sign the case-made at any time it may suit his convenience" necessarily included a waiver of the time in which to suggest amendments, as otherwise the judge could not legally settle and sign the case-made until the expiration of the time for suggesting amendments, notwithstanding it was agreed that the case-made might be settled and signed at the judge's convenience. There is no merit in the motion to dismiss the appeal, and the same is denied.

The amended petition in this cause with its exhibits covers 141 pages of typewritten matter, and it is not thought necessary or advisable to incumber the record with a copy of the same.

The material averments of the petition are: That both the plaintiff and defendant

are minors. That Frank Hill is the duly appointed, qualified, and acting guardian of the plaintiff. That Bates B. Burnett is the duly appointed, qualified, and acting guardian of the defendant. That both plaintiff and defendant are duly enrolled citizens by blood of the Cherokee Indian Nation, and as such entitled to receive an allotment of land of the Cherokee Nation. That the lands described in the petition do not exceed in value or extent the quantity of land that a Cherokee Indian Citizen may select in allotment. That the plaintiff has never selected or taken in allotment any land other than the lands described in the petition. That the plaintiff was entitled to select as his allotment in the Cherokee Indian Nation the lands described in the petition. That on the 5th day of November, 1906, and for some years prior thereto, that said lands were improved, and the improvements thereon owned by one James Fugate, a claimant to citizenship of the Cherokee Nation by intermarriage. That prior to said 5th day of November, 1906, said Fugate by formal application to the Commissioner of the Five Civilized Tribes, had selected said lands as his allotment in the Cherokee Nation, which selection was final and conclusive, subject only to the final enrollment of said Fugate as a citizen of the Cherokee Nation by marriage. That in November, 1906, the Supreme Court of the United States decided in the case of Daniel Red Bird et al. v. United States, 203 U. S. 76, 27 Sup. Ct. 29, 51 L. Ed. 96, that said Fugate was of that class of claimants that were not entitled to citizenship by intermarriage. That the application of said Fugate for enrollment as a citizen of the Cherokee Indian Nation was not finally rejected by the Secretary of the Interior until the 26th day of January, 1907. That on the 29th day of January, 1907, the Secretary of the Interior instructed the Commissioners of the Five Civilized Tribes to revoke the two following regulations:

"It is hereby ordered that any such intermarried applicant may appear at the Cherokee land office at any time before the application for his enrollment is finally disposed of by the Commissioner and the department, and upon proper showing will be permitted to designate the land now held as his prospective allotment as the allotment of some citizen member of his family entitled to an allotment of land in the Cherokee Nation: Provided, however, that the intermarried applicant must show that the person in whose favor he desires to invoke this order is a member of his immediate family or a dependent living with him for whom he has the right and duty to obtain a suitable allotment of land.

• "It is further ordered that when an intermarried applicant has appeared before the Commissioner and designated the land now held by him as his prospective allotment as the allotment of some member of his family or dependent living with him, as above set forth, said land will be arbitrarily allotted by the Commissioner to such citizen member of his family or dependent.

"It is further ordered that the terms of this order will not apply to lands involved in contest proceedings at the date hereof."

"The Commissioner will recognize a transfer entered into in good faith by any such intermarried applicant prior to his rejection by the Secretary of the Interior, whereby the improvements upon the land held by the intermarried applicant as a prospective allotment are transferred to a citizen of the Cherokee Nation entitled to take an allotment of lands in said nation, and upon the rejection of such intermarried applicant by the Secretary of the Interior the citizen vendee of such improvements may appear at the Cherokee land office of the commissioner at Muskogee, Ind. T., and select as his allotment the land formerly held by the intermarried applicant when such citizen vendee can produce a bill of sale evidencing the fact that the transaction was entered into in good faith prior to the final rejection of the intermarried applicant by the Secretary of the Interior."

— and directed there should be no restraint on the filing of applications for lands tentatively allotted to claimants to citizenship by intermarriage, and on the 6th day of February, 1907, the Commissioner to the Five Civilized Tribes announced that the so-called tentative selections of claimants to citizenship in the Cherokee Nation by intermarriage should be subject to selection by any duly enrolled citizen of the Cherokee Indian Nation entitled to take an allotment. That on the 6th, 7th and 8th of February, 1907, applications for allotments of this description were received, but that the Secretary of the Interior instructed said Commissioner to suspend until March 5, 1907, all orders of the department permitting the selection of land tentatively allotted to intermarried citizens by duly enrolled citizens. That on the 13th day of February, 1907, the Secretary of the Interior directed said Commissioner to restore all intermarried claimants to citizenship to the same rights which they possessed prior to the departmental order of January 29, 1907, so far as the rights of said intermarried citizens were concerned. That under the acts of Congress lands tentatively selected in allotments by claimants to citizenship by intermarriage were withdrawn from allotment after the 5th day of November, 1906, up to and in-

cluding the 29th of January, 1907, except where said lands were applied for by a member of the family of said intermarried claimant who was a duly enrolled citizen, or where said lands were applied for by a duly enrolled citizen who had purchased the improvements thereon from an intermarried claimant. That the defendant herein lost his right to select said lands in allotment upon a so-called application made therefor on the 10th day of November, 1906. That the defendant was not a member of the family of said Fugate, nor had the defendant or any one for him purchased the improvements on said land from said Fugate. That accordingly said lands were withdrawn from allotment on said 10th day of November, 1906. That in pursuance of said order of the Commissioner made on the 18th day of November, 1906, plaintiff purchased from said Fugate for the sum of $3,500 the improvements upon said land, and took a bill of sale for said improvements from said Fugate, and immediately entered into possession of said lands, and has continued in possession of said lands since the 18th day of December, 1907. That prior to the taking of said bill of sale and the payment of the purchase price therefor, and prior to taking possession of said lands, the plaintiff inquired at the office of the Commissioners to the Five Civilized Tribes to ascertain whether or not it appeared of record there that any person other than said Fugate owned the improvements on said lands, and to ascertain whether or not the purchaser of said improvements from said Fugate by the plaintiff would be recognized by said Commissioner, and the plaintiff permitted to select said land for allotment. That plaintiff was advised by said Commissioner that the records of his office showed that no one claimed any interest in said improvements, other than said Fugate, and that no application to select said lands in allotment had been made, and that said purchaser of said improvements, and the taking of a bill of sale therefor, would be recognized by said Commissioner, and that plaintiff would be permitted to select said land in allotment. That plaintiff in reliance upon the information as obtained from the said Commissioner paid said Fugate for said improvements, and entered into possession of said lands on the 18th day of December, 1906. That in February, 1907, and prior to the selection of said lands in allotment by the said defendant, the plaintiff placed other valuable improvements on said lands. On the 10th day of November, 1906, the defendant appeared before the Commissioner to

the Five Civilized Tribes, and offered to make formal application for the selection of the above-described land as a part of an allotment of the defendant, but the plaintiff avers that no formal application for the selection of said land in allotment was made by defendant on said 10th day of November, 1906. That the said Commissioner refused to allot said lands to plaintiff on said 10th day of November, 1906, for the reason that at that time the lands above described, together with all other lands tentatively allotted to intermarried claimants to citizenship in the Cherokee Nation, were withdrawn from the allotment, excepting to the extent that a duly enrolled member of the family might select said land. That on the 15th day of May, 1907, Bates B. Burnett, guardian of the defendant, made formal application for the selection of the above-described land as a part of the allotment of the defendant, and that on said day said land was set apart and allotted to the defendant. That the plaintiff on the said 15th day of May, 1907, and at all times since said 18th day of December, 1906, was the owner of the improvements upon the lands above described and in possession of the same. That on the 16th day of May, 1907, Frank L. Hill, as guardian of the plaintiff, made application to have said lands set apart as the allotment of said plaintiff. That said application was refused on account of the prior filing of the defendant. That on said day the plaintiff instituted contest proceedings before said Commissioner in the manner required by the rules and regulations of the Department of the Interior, in which proceedings the plaintiff claimed preferential right in selecting said lands as an allotment. That on the 21st day of February, 1910, said contest was decided in favor of the defendant by the said Commissioner, and the plaintiff prosecuted an appeal to the Commissioner of Indian Affairs and on the 7th day of May, 1910, the decision of the Commissioner was affirmed by the Commissioner of Indian Affairs. That an appeal from the said decision was duly prosecuted to the Secretary of the Interior, who on the 29th day of November, 1910, decided said contest claim in favor of the plaintiff. That on the 18th day of October, 1912, the Secretary of the Interior reconsidered his said opinion, and reversed the decision theretofore rendered by him, and awarded the lands in controversy to the defendant. That the patent for said lands has been duly issued to the defendant by the Principal Chief of the Cherokee Nation duly approved by the Secretary of the

Interior. "That under the law the said patent should. have been issued to this plaintiff." That the defendant has never availed himself of the rights conferred by the act of Congress on the 2nd day of March, 1907, entitled "An act for the relief of certain white persons who intermarried with Cherokee citizens" (34 Stat. 1220, c. 2521), and has never purchased the improvements on said lands from said Fugate.

Plaintiff further avers:

"That in the final decision of said contest case by the Secretary of the Interior, awarding the lands herein described to the defendant, the Secretary of the Interior committed grave and controlling errors of law, and that as a result of this misapplication of the law by the Secretary of the Interior, the patent above described was delivered to the defendant when the same should have been issued and delivered to the plaintiff."

The following act of Congress approved March 2, 1907, is embraced in the petition:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled: That for sixty days after allotment but in no case less than sixty days after the approval of this act white persons who intermarried with Cherokee citizens prior to December sixteenth, eighteen hundred and ninety-five, and made permanent and valuable improvements on lands belonging to the Cherokee Nation prior to the decision of the Supreme Court of the United States in the case of Daniel Red Bird, the Cherokee Nation and others, against the United States (two hundred and third United States, page seventy-six) shall have the right to sell such improvements to citizens of the Cherokee Nation entitled to select allotments at a valuation to be approved by an official to be designated by the Secretary of the Interior for that purpose; and the vendor shall have a lien on the rents and profits of the land on which the improvements are located for the purchase money remaining unpaid, and shall have the right to enforce such lien in any court of competen' jurisdiction: Provided, that where citizens of the Cherokee Nation entitled to allotments have heretofore applied for lands on which intermarried white persons own improvements, such citizens entitled to allotments shall have the prior right to purchase said improvements as herein provided."

A copy of all testimony and proceedings in said contest case and copies of all decisions rendered therein by the officials of the Interior Department are attached to said petition and made a part thereof as Exhibit A.

The plaintiff prays "that it be adjudged that the defendant holds the legal title to the lands described in the petition in trust for the plaintiff, and that the defendant be required to execute and deliver to the plaintiff a due and proper conveyance of said lands, and, upon the failure of the defendant so to do, that the decree herein, establishing the trust in favor of the plaintiff as against the defendant, be considered and adjudged as passing the legal title to said lands from the defendant to the plaintiff," and further prays for such other equitable relief as he is entitled to in the premises, and costs of this action. To said amended petition the defendant interposed a demurrer upon the ground, together with other grounds, "that the said petition on its face does not state facts sufficient in law to constitute a cause of action in favor of said plaintiff and against this defendant." The court sustained the demurrer, and thereafter the plaintiff announced in open court that he would stand upon his amended petition, and did not desire to plead further. Judgment was rendered for defendant, and for costs, to which plaintiff duly excepted, and brings error to this court. It follows that the only question involved in this appeal is as to the sufficiency of the petition.

After a careful consideration of the petition we think, and so hold, that the petition fails to point out "any misapprehension of facts or misapplication of the law by the Secretary of the Interior in deciding the contest," the averments in the petition "that said patent should have been issued to the plaintiff," and, "that the Secretary of the Interior committed grave and controlling errors of law and as a result by this misapplication of the law by the Secretary of the Interior, patent was delivered to the defendant when the same should have been issued and delivered to the plaintiff," are mere conclusions of the pleader.

In Maxwell Land-Grant Case, 121 U. S. 325, 7 Sup. Ct. 1015, 30 L. Ed. 949, it is said:

"The respect due to a patent, the presumptions that all the preceding steps required by the law had been observed before its issue, the immense importance and necessity of the stability of titles dependant upon these official instruments, demand that the effort to set them aside, to annul them, or to correct mistakes in them should only be successful. when the allegations on which this is attempted are clearly stated and fully sustained by proof."

We have carefully considered the opinion of Judge Sanborn in Germania Iron Co. v. James, 89 Fed. 811, 32 C. C. A. 348, cited and relied upon by the plaintiff in error, and do not think that the views herein expressed are in conflict with said opinion.

Ross v. Stewart , 25 Okla. 611, 106 Pac. 870, is a case filed for the identical relief sought in the instant case, and the controlling question involved in said opinion is the sufficiency of the petition. In said case Chief Justice Kane rendered a very exhaustive opinion, bristling with authorities, and held the petition insufficient; the syllabus in said case being:

"2. A patent issued by such tribunal is impervious to attack in a court of equity, unless the Commission was induced to issue it to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts."

"4. A petition, filed in a court of equity for the purpose of having the holder of a patent to a town lot in one of the towns of the Cherokee Nation declared the trustee for an adverse claimant, should only be held sufficient when the facts upon which relief is prayed are clearly and fully stated."

Ross v. Stewart, supra, was appealed to and affirmed by the Supreme Court of the United States, 227 U. S. 530, 33 Sup. Ct. 345, 57 L. Ed. 626. In the body of the opinion in said case, it is said:

"The test to which the petition must be subjected is this: All reasonable presumptions must be indulged in support of the action of the officers to whom the law intrusted the proceedings resulting in the patent, and unless it clearly appears that they committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices, and that as a result the patent was issued to the plaintiff, their action must stand."

The petition in the instant case is a much more abortive attempt as to its allegation of the misinterpretation of the facts and misapplication of the law on the part of the Secretary of the Interior than the allegation of the petition—which was held insufficient—in the case of Ross v. Stewart, supra.

It is held in Baltz v. Mitchell, 41 Okla. 96, 137 Pac. 666:

"The courts will not disturb decisions by the Department of the Interior based purely upon findings of fact from the testimony submitted, where there is no fraud nor apparent error of law in such department decisions"—citing with approval Garrett et al. v. Walcott et al., 25 Okla. 574, 106 Pac. 848; Robinson v. Owen et al., 30 Okla. 484, 119 Pac. 995; Alluwee Oil Co. v. Shufflin et al., 32 Okla. 808, 124 Pac. 15; Summers v. Barks et al., 36 Okla. 337, 127 Pac. 402; Johnson et al. v. Riddle, 41 Okla. 759, 139 Pac. 1143; Jones et al. v. Fearnow et al., 53 Okla. 822, 156 Pac. 309.

In Jones et al. v. Fearnow et al., 53 Okla. 822, 156 Pac. 309, it is held:

"The United States land department primarily is intrusted with the disposal of the public domain, and that the action of its officers will not be inquired into in the courts, unless it clearly appears that they have committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they, themselves, were chargeable with fraudulent practices and that as a result thereof the patent was issued to the wrong party."

It is not intimated by any averment of the petition that fraud was practiced by the defendant in error, or that fraudulent practices of the department resulted in the patent being issued to the wrong party, nor does the petition point out by any direct averment any misconception of the facts or any errors of law in the department's decision awarding the land to the defendant in error.

In Bell v. Mitchell, 39 Okla. 544, 135 Pac. 1136, it is said:

"It is the law that where the department has erred in a matter of law, or the losing party before the department had fraud practiced upon him, or the department has committed such gross error that its finding of fact practically amounts to fraud, its action is not final and conclusive upon the court, and that the party who had been wronged by its action may obtain relief. Rector v. Gibbon, 111 U. S. 276, 4 Sup. Ct. 605, 28 L. Ed. 427; James v. Germania Iron Co., 107 Fed. 597, 46 C. C. A. 476; Garrett v. Walcott, 25 Okla. 574, 106 Pac. 848. But the action of the department in its decision in contest cases should not be set aside or disturbed for slight reasons, or merely because of a preponderance of the evidence. See Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800. The Commission to the Five Civilized Tribes was vested with authority to hear contest and to determine conflicting rights of applicants to allot land in the Indian Territory, and it is only in exceptional cases, and under unusual and extraordinary circumstances that the action of the department should be disturbed."

As the purchase of the improvements from Fugate was made in 1906, we are at a loss to understand why the act of Congress approved March 2, 1907, was incorporated in the petition, or how said act applies in this case.

There are no exceptional, unusual, or extraordinary circumstances averred in the petition why "the action of the department in this case shoud be disturbed."

Again the contention of the plaintiff of his right to have impressed upon the land in

question a trust is predicated upon an untenable premise "that the plaintiff by the purchase of the improvements made by Fugate upon said land secured a preferential right to select the land in controversy as an allotment, for the reason that Fugate did not have such preferential right which he could transfer to the plaintiff."

Because of the failure of the plaintiff to point out in his petition by proper averments any "gross mistake of fact, or misapplication of law by the Secretary of the Interior," the court did not err in sustaining the demurrer to the petition, upon the ground "that it did not state a cause of action."

This cause is affirmed.

By the Court: It is so ordered.