## CHARLES B. JORDAN V. ROBERT SMITH.

(Filed June 9, 1903.)

1. **LAND OFFICE—When Findings of Fact Final.** The findings of fact by the land department in a contest proceeding are as conclusive and binding upon the courts as a verdict of a jury in their own tribunals, and the only inquiry the court can make is, was there any evidence on which to base the finding.

2. **SAME—When Action Will Lie.** An action to declare a resulting trust by an occupant of government land against a successful contestant, does not lie until the title to the land in question has passed from the government to such successful contestant. A demurrer to a petition which shows on its face that a patent has not issued, is properly sustained by the trial court.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before John L. McAtee, Trial Judge.*

*John F. Curran,* for plaintiff in error.

*Rush & Steen,* for defendant in error.

### STATEMENT OF FACTS.

On the 12th day of October, 1893, plaintiff in error settled upon the south half of southwest quarter of section 3, township 23, north, range 7 west I. M., in Garfield county. On the 8th day of December, 1893, the defendant in error filed in the land office at Enid his soldier's declaratory statement for the entry of the southeast quarter of said section 3. On January 11, 1894, plaintiff in error, Jordan, applied to enter the south half of the southwest quarter

and the west half of the southeast quarter of said section 3, alleging settlement and occupancy, commencing on October 12, 1893.

These two claims being in conflict as to the west half of the southeast quarter of section 3 aforesaid, a contest to determine their relative rights thereto, was ordered and had in the local land office, resulting in a finding and decision of said office in favor of defendant in error and awarding the whole of said southeast quarter to him. On appeal this decision of the local office was approved by the commissioner of the general land office, and from the commissioner's decision and finding an appeal was taken to the secretary of the interior, by whom the same conclusion was reached, and certified to the commissioner.

Thereafter, on October 6, 1900, plaintiff in error commenced the present action in the district court of Garfield county, averring that the secretary of the interior made a mistake in his findings of fact in the said contest, and a consequent error of law in applying the law to the facts thus found, and praying that "he be adjudged to be the rightful owner of said west half of southeast quarter, section 3, and that defendant be held to hold the land as trustee of the plaintiff, etc."

In his petition plaintiff sets out what purports to be all the evidence taken in the case in the contest before the land department and also the findings and conclusions of the secretary of the interior therefrom. To this petition the defendant interposed a general demurrer, which upon due consideration was by the court below sustained, and the cause dis-

missed, and from this judgment the present appeal is prosecuted. Affirmed,

Opinion of the court by

GILLETTE, J.: From the foregoing statement of facts, it is manifest that the sole question presented to this court is: Did the trial court err in sustaining the demurrer? and this must be determined by determining whether the secretary of the interior committed error in applying the law to the facts by him found in the contest proceedings.

The findings and decision of the secretary of the interior are set out in full in the petition, and we quote therefrom as follows:

"The evidence shows that the plaintiff lives on the south half of the southwest quarter of said section, and that he made a pasture of some three or four acres in the west half of the southeast quarter of said section by placing some poles and brush at each end of the pasture, which was in a canon, the sides of which formed the sides of the pasture; and that he also placed notices on stakes about the lines of the west half of said southeast quarter and made two or three small mounds thereon. He admits that he also placed stakes with notices to keep off signed with his name on the north half of the southwest quarter and on other parts of said section 3.

"He says in his testimony that he was trying to hold the 'east quarter of section 3, a mile strip,' for a son who was not quite of age.

"The witnesses for the defendant testified that there were no signs of improvement on the west half of said southeast quarter on December 7, 1893, the day before the plaintiff's soldiers' declaratory statement was filed, and it is not pre-

45—Vol 12

tended that the defendant had actual notice that the plaintiff claimed the west half of said southeast quarter, but it is insisted that his use of part of the canon, which he had fenced in for a pasture, is such a notice of plaintiff's claim to the west half of said southeast quarter as bound the defendant as effectually as if he had actual notice of the claim.

"This would undoubtedly be so, were it not that the plaintiff also gave notice by posting on the north half of the said southwest quarter, 'to keep off' said north half of said southwest quarter, on the south half of which he made settlement and established residence on October 12, 1893.

"It is well settled that notice describing the land claimed posted on a tract of land in conspicuous places, is quite as effectual in notifying others of the extent of the claim as improvements placed on different subdivisions. (*Smith v. Johnson*, 17 L. D. 454; *Sweet v. Doyle*, Id. 197.) In the face of an adverse claim a settler should not be allowed to say; 'it is true I gave notice by posting that I claimed the north half of the quarter section, on the south half of which I made settlement and established residence, but I had a small pasture in the west half of another quarter section, and I claim that half, and not the north half of the quarter section on the south half of which I settled and established residence.'

"For this reason your office decision affirming the judgment of the local officers is affirmed."

So far as the courts are concerned the findings of fact by the land department in a contest proceeding are as conclusive and binding upon the courts as the verdict of a jury in their own tribunal, and the only inquiry the court can make is, was there any evidence on which to base the finding? (*Paine v. Foster,* 9 Okla. 213.)

If the court were at liberty to review the evidence, and therefrom make conclusions of its own, the proceedings and findings in the land office would be little more than a farce; besides it is more than likely the court would now find that the great preponderance of the evidence showed that plaintiff in error did not construct his much valued pasture in the canon on the west half of the southeast quarter of section 3, until some time after the defendant in error had filed his soldiers' declaratory statement. But be that as it may, it is manifest the secretary found the plaintiff in error carried his notice giving to such an extent that it was quite impossible to tell what land he did claim aside from the south half of the southwest quarter on which he resided; in other words, that he was not observing good faith either towards the government or others seeking homes like himself; and of this fact there was sufficient evidence. Besides we do not think the letter of the honorable secretary of the interior to the commissioner of the general land office admits of the construction given it by plaintiff in error. The secretary, after stating that "the witnesses for the defendant testified that there were no signs of improvement on the west half of said southeast quarter on December 7, 1893, the day before the plaintiff's soldiers' declaratory statement was filed, and it is not pretended that the defendant had actual notice that the plaintiff claimed the west half of the southeast quarter," then proceeds as follows:

"But it is insisted that his use of part of the canon, which he had fenced in for a pasture, is such a notice of plaintiff's claim to the west half of said southeast quarter as bound the defendant as effectually as if he had actual notice of the claim."

As a conclusion to this statement, the secretary then says:

"This would undoubtedly be so, were it not that the plaintiff also gave notice by posting on the north half of said southwest quarter to 'keep off' said north half of said southwest quarter."

From this language of the secretary the plaintiff makes the following deduction, viz:

"The secretary finds that the use of the pasture upon this land was sufficient notice to defendant of plaintiff's claim, if it had not been for the stakes placed upon the north half of the quarter section, upon the south half of which plaintiff had his dwelling house, etc."

The language of the secretary is not a statement or finding of fact, but an application of the law to the hypothetical statement of fact contained in the argument. There is nowhere any statement by the secretary that he finds as a fact that the plaintiff did have his "pasture" fenced or used as such before the filing of the soldiers' declaratory statement.

But aside from and above the mere decision of the land department upon the facts in the case, a legal proposition stands out upon the the face of the petition, and cannot be ignored by the court in passing upon the sufficiency of this petition.

The relief sought by the action is to have the court declare a resulting trust, and the defendant decreed to hold the legal title in trust for and ordered to convey the same to plaintiff. The only allegation we find in the petition as to the present status of the title is expressed in these words, viz:

"That the defendant has made final proof on said land, and is now entitled to patent under said decision."

If he is "entitled to the patent" then he has not received the title, and if he has not received the patent then he cannot be compelled to convey the title to the plaintiff for he surely could not be compelled to convey something which he never had. The patent is the government deed for premises, and the homesteader is not entitled to his (deed?) upon mere "final proof." A homestead claimant may make final and upon the face of it satisfactory proof of occupancy and compliance with the land laws, and still never be entitled to the government deed, much less be adjudged to actually have the title and be directed to convey it to another. He cannot be decreed to hold it in trust, because he does not hold it at all. After making final proof he may abandon the claim or he may fail to pay for it,or he may sell his right to the premises to another. In either case he would never have the title and could not be compelled to transfer it. (*Bockfinger v. Foster*, 10 Okla. 501-502, and cases there cited.)

It thus appearing that there was ample evidence in the proceedings in the land office and before the secretary of the interior upon which to base the findings made by the honorable secretary, and it also appearing that there is no allegation in the petition that the defendant has ever received the title to said premises from the government, it follows that the demurrer was rightfully sustained, and the case dismissed.

The judgment of the court below must be affirmed.

Beauchamp, J., and Pancoast, J., dissent from the second paragraph of the syllabus, and the opinion in support thereof; all the other Justices concurring.