## THOMPSON v. HILL.

No. 4711.   Opinion Filed June 22, 1915.

(150 Pac. 203.)

1. **INDIANS — Jurisdiction of Commissioner — Allotments — Contested Claims.** The Commissioner to the Five Civilized Tribes, subject to the control of the Commissioner of Indian Affairs, and the Secretary of the Interior, constitutes a special tribunal, vested with the judicial power to hear and determine claims of all parties to allotments of the lands in the Cherokee Nation, and to execute its judgments by the issue of the allotment certificates, which constitute conveyances of the right to the land to the parties who it decides are entitled to the property, and that tribunal has the exclusive jurisdiction to determine such claims and to issue such conveyance.

2. **SAME—Allotment Certificates—Effect.** The allotment certificate, when issued, like the patent to public lands, is an adjudication of the special tribunal, empowered to decide the question, that the party to whom it is issued is entitled to the land, and it is a conveyance of the right to this land to the allottee.

3. **SAME—Jurisdiction of Courts.** So long as the title to these lands remains in the Cherokee Nation, subject to the control and disposal of that tribunal, the courts of civil procedure have no jurisdiction or power to control or in any manner question or interfere with the disposal of said lands.

4. **SAME—Action Against Contestant—Resulting Trust.** An action to declare a resulting trust by an occupant of these lands, against a successful contestant, does not lie until the title to the land in question has passed from the nation or government to the successful contestant and an allotment certificate issued therefor.

5.   SAME—Petition—Issuance of Allotment Certificate.  A petition
to declare a resulting trust in these lands, which does not allege
and show that an allotment certificate has been issued to the
land involved, does not state facts sufficient to constitute a cause
of action.

(Syllabus by Robberts, C.)

*Error from District Court, Nowata County;*

*T. L. Brown, Judge.*

Action by Mary Davis Hill, by Davis Hill, her father
and natural guardian and next friend, against Thomas L.
Thompson, administrator of the estate of Thomas R.
Thompson, deceased.  Judgment for plaintiff, and defend-
ant brings error.  Reversed.

*J. B. Campbell,* for plaintiff in error.

*Wm. P. Thompson,* for defendant in error.

Opinion by ROBBERTS, C.  From the district court
of Nowata county.  Action to declare a resulting trust.

On the 28th day of May, 1907, Thomas L. Thompson,
plaintiff in error, as administrator of the estate of
Thomas R. Thompson, deceased, made application to select
and cause to be allotted to him the land in controversy
herein, at the Cherokee land office, as an Indian allot-
ment.  On the 4th day of January, 1908, the defendant
in error, Davis Hill, as the father and natural guardian
of Mary Davis Hill, made application, at the same office,
to select and have set aside said land as an allotment for
said Mary Davis Hill, which application was duly re-
jected because of the prior application of Thomas L.
Thompson, as administrator.  Both of said parties were
citizens, by blood, of the Cherokee Nation, and entitled to
allotments in said nation under the act of Congress
approved April 26, 1906.  On the same day, after the

application of defendant in error had been rejected, she, by her said guardian, filed an affidavit of contest upon the following grounds:

"That at the time said land was applied for and set apart as a portion of the allotment of Thomas R. Thompson, deceased, it was inclosed with a two-wire fence, and that said minor, contestant, was at that time, through her father and natural guardian, Davis Hill, the owner thereof and in possession of said land."

In answer to the charges of the contestant, the contestee, defendant in error, alleged:

"That he had purchased the possessory right to said tract in controversy, prior to his application for said land, from one Stephen W. Pitsenberger, and that he was entitled to have said land allotted in the name of Thomas R. Thompson, deceased, both by reason of such purchase and by reason of being the first citizen to make application therefor."

Notices of contest were served on defendant, and the case was tried before the Commissioner to the Five Civilized Tribes on the 11th day of June, 1908, and the evidence taken and preserved under the rules of the Department. Upon the testimony so taken the Commissioner found against the contestant, and rendered his decision accordingly in favor of the contestee, Thomas L. Thompson, administrator, who is the defendant in error herein. After reciting the findings of fact, said Commissioner made the following ruling and judgment:

"It is therefore ordered and adjudged that the E. ½ of the N. E. ¼ of the N. E. ¼, and the N. W. ¼ of the N. E. ¼ of the N. E. ¼ of section 14, township 25 north, range 16 east of the Indian Meridian, containing 30 acres, and being the land in controversy in Cherokee allotment contest No. 5005 be and remain a portion of the allot-

ment selection of Thomas R. Thompson, deceased, subject to his final enrollment as a citizen of the Cherokee nation under the act of Congress approved April 26, 1906 (34 Stat. 137), and that the records of the Cherokee land office be made to conform in all things to this decision."

Following the decision of the. Commissioner to the Five Civilized Tribes, notice of said decision was duly served upon the contestant and also the contestee, being directed to each of said parties, and it is as follows:

"You are hereby notified that on January 22, 1910, the Acting Commissioner to the Five Civilized Tribes rendered his decision in the above-entitled cause, holding that the land in controversy herein be and remain a portion of the allotment selection of Thomas R. Thompson, deceased, subject to his final enrollment as a citizen of the Cherokee Nation, under the act of Congress approved April 26, 1906."

In due time the case was appealed to the Commissioner of Indian Affairs and affirmed upon the statement and findings of fact, differing somewhat, but substantially the same, as that of the Commissioner to the Five Civilized Tribes. After proper notice of said decision to said parties, the contestant again appealed the case to the Secretary of the Interior, and on the 16th day of June, 1910, the honorable Secretary affirmed the decision of the lower officers as follows:

"This is an appeal by the contestant from your decision of April 26, 1910, wherein, affirming the decision of the Commissioner to the Five Civilized Tribes of January 22, 1910, you awarded the land involved in the above-mentioned case to the contestee.

"The evidence shows beyond question that Davis Hill, father of the minor contestant, Mary Davis Hill, caused a two-wire fence to be placed upon said land solely for the purpose of segragating it as the prospective allotment for

his said daughter. This fact, rather than the actual value of the fence, is the controlling feature of the case. Davis did not take possession of the land after fencing it, either in person or by tenant; and made no use whatever of it, not even for grazing purposes. In fact, it appears that he did not even see the land from the time he caused the fence to be placed upon it until more than a year afterwards. Under the circumstances, his conduct amounted simply to an attempt to select the tract by private act rather than by the method contemplated by law. Of course, the Department cannot sanction such a procedure as a substitute for the usual application at the land office. The contestant would not have been bound by such an informal act, and it would therefore be unjust to hold that it was binding against others. Were it permissible to select allotments through segregation by private act, as was attempted in this case, it would be necessary to consider the value of the fence or other monument with reference to its possible efficacy in accomplishing the purpose intended, instead of its actual pecuniary value. Finding no cause to disturb the action heretofore taken, your said decision is hereby affirmed."

Notice of said decision was duly served on both of said parties, which notices were dated the 28th day of June, 1910. On the 30th day of June, 1910, the plaintiff in error herein commenced this action in the district court of Nowata county, to declare a resulting trust. Said petition is as follows:

"The plaintiff, Mary Davis Hill, by Davis Hill, her father and natural guardian, states and shows to the court: That she is a citizen of the Cherokee Nation, with all the rights of such citizen of said nation by blood. That she resides in Craig county, Okla., and that the land in controversy lies and is situated in Nowata county, Okla. That the defendant, Thomas L. Thompson, administrator of the estate of Thomas R. Thompson, deceased, resides in Mayes county, Okla. That the land in question in this cause is as hereafter described [land described]. That

she is the owner of and in possession of the same, and
that during the time she was in possession of the same,
she, through her father, Davis Hill, placed valuable and
lasting improvements thereon, consisting of a two-wire
fence and posts, inclosing the entire 30 acres, and that
the value of the improvements thereon amounts to not less
than $60. That the value of the land exclusive of the
improvements is not less than $2,000. That she is in
possession of the same, intending to take her allotment
thereon, having the same surrounded by a two-wire fence
and posts. That on the 4th day of January, 1908, Davis
Hill, the father and natural guardian of the plaintiff, made
application to the Commissioner to the Five Civilized Tribes
to take in allotment for Mary Davis Hill, the plaintiff here-
in, the above-described land, when he learned for the first
time that Thomas L. Thompson, administrator of the estate
of Thomas R. Thompson, deceased, had made application
to the Commissioner to the Five Civilized Tribes to select
the same in allotment for the defendant, and that the
Commissioner to the Five Civilized Tribes had, on the
28th day of May, 1907, set apart to the said defendant
said land as a portion of the allotment of the said Thomas
R. Thompson. That at said time the said Thomas L.
Thompson, as administrator of the estate of Thomas R.
Thompson, deceased, was not in possession of said lands,
did not own any improvements thereon, and was not
entitled to the possession thereof. That thereafter, as
above stated, the plaintiff, through her father, Davis Hill,
on the 4th day of January, 1908, filed her application to
take in allotment the said lands, and the said commissioner
refused to allow said application, and she instituted a
contest for said lands, and in said contest she established
by the evidence that all the improvements on the lands
were hers and that the defendant had no improvements
of any kind or character thereon, and that the land had
been segregated by her for the purpose of taking her allot-
ment thereon, under the provisions of the Cherokee Agree-
ment, and that said improvements were substantial im-
provements and sufficient to turn back stock, and were in

good condition at the time the defendant applied for said land.

"She further established by the evidence that she was in possession of the lands at the time the lands were filed on by the defendant, and that she had been in possession thereof since the month of December, 1906.

"And she further established by the evidence that the defendant, Thomas L. Thompson, as administrator of the estate of Thomas R. Thompson, deceased, had no right, title, or interest in and to the improvements, and was not entitled to the possession thereof, and had never been in possession thereof.

"And she further established, that at no time had she ever parted with her right to the improvements to the same, and she further established that she owned the land and the fencing thereon at the time the Commissioner permitted the defendant to select the land, and that at the time she had preferential right, under the Cherokee Agreement, to select the lands upon which her improvements were located. That notwithstanding these things that were established, the Commissioner, who had charge of the rendition of the opinion, found against her right to select the land, by his decision dated the 22d day of January, 1910, and the lands were not awarded to her. That thereafter, in due course, she appealed from the decision of the Commissioner to the Five Civilized Tribes to the Commissioner of Indian Affairs, who found that she was the owner of the substantial improvements upon the land, and that the same was sufficient to turn stock, and that the defendant had no right, title or interest in the land, had no improvements on the lands, and was not in possession thereof, and that the plaintiff had the only improvements upon the land at the time the defendant was permitted to file on same, and that the wire fence belonged to the plaintiff, and found as the only reason for denying the right of the plaintiff to take the land in allotment that the plaintiff did not actually use the land for cultivation or pasture purposes, and denied the right of the plaintiff to take the same in allotment, and

affirmed the decision of the Commissioner to the Five Civilized Tribes. Said decision of the Commissioner of Indian Affairs was rendered on the 26th day of April, 1910. That thereafter the plaintiff appealed to the Secretary of the Interior from the decision of the Commissioner of Indian Affairs, and on the 16th day of June, 1910, the Secretary of the Interior rendered his decision affirming the decision of the Commissioner of Indian Affairs, finding that the evidence showed beyond question that Davis Hill, father of the plaintiff, Mary Davis Hill, caused a two-wire fence to be placed upon the land for the purpose of segregating the same for the allotment of his said daughter, but, notwithstanding said finding, affirmed the decision of the Commissioner of Indian Affairs, and denied the plaintiff the right to select the same in allotment. Copy of all proceedings are herewith filed, marked 'Exhibit A,' and made a part of this petition. That the decision in these cases, with reference to the allotment, was a decision with reference to the right of improvements of the value of over $20, and under the Constitution of the United States, neither the Commissioner to the Five Civilized Tribes, nor the Commissioner of Indian Affairs, nor the Secretary of the Interior, were authorized to adjudicate and decide the right of the contestants to the improvements of over the value of $20 on lands in possession of the contestant in the Cherokee Nation, and the decision of such officers was a nullity, and without these decisions there was no jurisdiction, or authority whatever in said finding, to award the land in question to the defendant, Thomas R. Thompson. That, in fact, each of said officers committed errors of law in holding that, notwithstanding, Thomas L. Thompson, administrator aforesaid, was never in possession of the lands, never owned the improvements thereon, he was yet entitled to allot the land. That the decisions in this case are a gross misunderstanding, and a gross error under the interpretation of the proven facts in the case, and said decision is contrary to the law and the facts applicable to the case. That the plaintiff in this case has no other lands to allot in the Cherokee Nation, and is claiming, holding,·

and owning this land, for allotment purposes, at this time, and has not made application to take other lands, and will not do so pending this litigation. That the lands in controversy are valuable for oil and gas-mining purposes, and that the chief value in said land is in the oil and gas underlying the same. That the plaintiff is informed and believes, and so alleges, that under some form of lease-contract with the defendant parties are undertaking to drill said land, and to extract therefrom the oil and gas underlying the same, which will be of irreparable damage to the plaintiff. That the damage complained of cannot be estimated in dollars and cents, and if such oil and gas is allowed to be extracted from and under said land, it will destroy the *corpus* of the estate, and render it valueless to the plaintiff, in the event of a final judgment in her favor in this cause.

"Wherefore, plaintiff comes into this court, and asks equitable relief, and she prays especially:

"First. That the defendant, Thomas L. Thompson, as administrator of the estate of Thomas R. Thomas, be decreed to be a trustee to hold the land in trust for this plaintiff.

"Second. That a decree be made that the defendant transfer this land to this plaintiff.

"Third. That a decree be made vesting the title to said land in this plaintiff.

"Fourth. That a decree be ordered that the judgment of the Commissioner to the Five Civilized Tribes, and of the Commissioner of Indian Affairs, and of the Secretary of the Interior is a nullity so far as it undertakes to divest the plaintiff of her right to allot said lands, and to take the same as part of her allotment.

"Fifth. That the defendant and all persons claiming by, through, or under him be forever enjoined from going upon said lands for any purpose and more especially from extracting the oil and gas underlying said lands, or in any manner interfering with the plaintiff in the possession of said lands, until the final disposition of this cause.

"Sixth. That the plaintiff have all other and further relief to which she in equity and good conscience may be entitled."

The entire record of the contest case before the departments, including the evidence and all pleadings and decisions of the successive officers, are attached to the petition herein and made a part thereof. To said petition, a demurrer was filed by defendant, but, without waiting for the court to rule upon it, the defendant answered, denying generally the allegations of the plaintiff's petition, and setting out at length the grounds upon which he bases his claims to said land, in substance, the same as made in the contest before the Indian and Land Departments.

After the issues in said cause had been duly joined, the parties entered into the following stipulation:

"Comes now the plaintiff, by her attorney, Wm. P. Thompson, and the defendant, by his attorneys, Maxey, Campbell & Beall, and agree that the above-entitled cause shall be submitted to the court for decision upon the complaint, answer, and reply filed in this court and the evidence taken in the contest proceedings, before the Dawes·Commission, together with plaintiff's original petition in contest before the Commission to the Five Civilized Tribes; the petition of plaintiff on appeal to the Commissioner of Indian Affairs, and the decision of the Commissioner of Indian Affairs; the petition of plaintiff on appeal from the Commissioner of Indian Affairs to the Secretary of the Interior, and the decision of the Secretary of the Interior, said pleadings, evidence, petitions and decisions to be taken as an agreed state of facts upon which this cause is submitted, and it is further agreed that plaintiff has no other lands to take as her allotment."

Trial was had to the court, and judgment rendered in favor of the plaintiff below, defendant in error, setting aside the decision of the Secretary of the Interior and

decreeing that plaintiff in error was holding the land in trust for Mary Davis Hill, the defendant in error. After overruling of motion for new trial and final decree, the plaintiff in error appealed to 'this court.

From the foregoing pleadings, and facts proven and agreed upon, this case must be determined. And here we are reminded of the fact that the petition does not allege, and it is nowhere shown by the proof, nor admitted by the parties, that a certificate of allotment or patent had been issued to the plaintiff in error, or to any other person, at the time this case was commenced in the district court, nor since that time, for that matter.

It appears that the plaintiff in error, Thomas L. Thompson, as administrator of the estate of Thomas R. Thompson, made application for this land on the 28th day of May, 1907, and Davis Hill, as guardian, made application to enter, and filed contest on the 4th day of January, 1908. Section 26 of the Cherokee Treaty, 32 Stat. at Large, 716, c. 1375, provides that:

"The names of all persons living on the first day of September, 1902, entitled to be enrolled * * * shall be placed upon the roll made by said Commission, and no child born thereafter to a citizen, * * * shall be entitled to enrollment as to participate in the distribution of the tribal property of the Cherokee Nation."

By subsequent acts of Congress all children born to citizens, and who were living March 4, 1906, were to be placed on the final rolls of the Cherokees. These "new borns" were known throughout the Cherokee Nation as "too lates"—that is, they were born too late for enrollment and participation in the lands and funds of the nation. The validity of these acts of Congress placing these "too lates" on the rolls of the Cherokees was immediately called in

question, and suit was instituted to determine the validity of these laws, and the Commission to the Five Civilized Tribes was enjoined from enrolling these "too lates." The rights of these "too lates" were not determined until the Supreme Court of the United States, in the case of *Gritts et al. v. Fisher*, handed down its decision on the 13th day of May, 1912. This case is reported in 32 Sup. Ct. 580, 224 U. S. at page 640, 56 L. Ed. 928. The Supreme Court held that these "too lates" were entitled to enrollment, and that is the reason why the Commissioner to the Five Civilized Tribes rendered his decision in favor of the plaintiff in error, subject to his final enrollment, as a citizen of the Cherokee Nation, under the act of Congress of April 26, 1906. So it will be seen that at the time Thompson applied for the land, it had not been settled that the deceased minor would have been a qualified citizen to take the allotment, if living, and evidently that is the reason the allotment certificate was not issued prior to the time the contestant, defendant in error, applied for the land, and entered contest. After the contest was filed, the Department could not issue the certificate because of the adverse claimants.

The decision of the Secretary of the Interior was rendered on the 16th day of June, 1910, and notice thereof dated at Washington, D. C., June 28, 1910, and this case filed in the district court of Nowata county, Okla., on the 30th day of June, 1910, two days after the issuance of the notice, all of which must be conclusive evidence that no certificate or patent had been issued at the time of the commencement of this case. The title to the land still remains in the government of the United States, in trust for the citizens of the Cherokee Nation. The Interior Department still has control of the land, and the title thereof is still at the disposal of the Cherokee Nation, subject to the

control of that Department. As said in *Wallace v. Adams,* 143 Fed. 721, 74 C. C. A. 540:

"The jurisdiction of the Commission and of the Secretary and the effect of their action on the allotment of the lands of the Choctaw and Chickasaw Nations are the same in effect as the jurisdiction and effect of the action of the Land Department of the United States in the disposition of the public lands within its control."

It has been held from the earliest date of these transactions that the Land Department does not lose control of the public lands, and that the courts have no jurisdiction or power to control the disposition of such lands, until the government has finally disposed of them by the issuance of patent therefor.

The leading, and one of the oldest and best-considered cases on this subject is *Johnson v. Towsley,* 13 Wall. 72, 20 L. Ed. 485, wherein it is said:

"1.    That the judiciary will not interfere, by mandamus, injunction, or otherwise, with the officers of the Land Department in the exercise of their duties, while the matter remains in their hands for decision.

"2.    That their decision on the facts which must be the foundation of their action, unaffected by fraud or mistake, is conclusive in the courts.

"3.    But that after the title has passed from the government to individuals, and the qestion has become one of private right, the jurisdiction of courts of equity may be invoked to ascertain if the patentee does not hold in trust for other parties."

In support of this doctrine, counsel cite the following cases, which we find to be clearly in point: *Leak v. Joslin,* 20 Okla. 220, 94 Pac. 518; *Brooks v. Garner,* 20 Okla. 236,

94 Pac. 694, 97 Pac. 995; *Garrett v. Walcott,* 25 Okla. 574, 106 Pac. 848; *Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870.

It has been decided by this court, time and again, from the earliest days of the territory to the present time, and also by the federal court, that an action will not lie to declare a resulting trust, involving the title to lands, until the government has finally parted with title, and issued patent therefor, and under the homestead laws, the issuance of a certificate of final proof would not suffice, but the government must part with the title and issue patent.

"An action to declare a resulting trust cannot be maintained against one who has made final proof for government land and received a final receipt therefor, until he has received a patent from the government conveying title to the land in question." (*Hamilton v. Foster,* 16 Okla. 220, 82 Pac. 821.)

"An action to declare a resulting trust by an occupant of government land against a successful contestant does not lie until the title to the land in question has passed from the government to such successful conestant. A demurrer to a pettiion which shows on its face that a patent has not issed is properly sustained by the trial court. (*Jordan v. Smith,* 12 Okla. 703, 73 Pac. 308.)

"A court of equity has no power to hear and determine any question affecting the title to public lands until the Land Department has determined the matter, and the title has passed from the government; but, after the title has passed to private parties, * * * equity will convert the holder of the legal title into a trustee to the true owner, if in equity and good conscience, and by the laws of Congress and rules of the Department thereunder, it ought to have gone to another." (*Twine v. Carey,* 2 Okla. 249, 37 Pac. 1096.)

"Town-site trustees appointed under act of May 14, 1890, where officers or agents of the government, and the issuance of a patent to them * * * did not divest the

Department of the Interior of all control over the land embraced therein; * * * and a petition which discloses on its face that the trustees had not, at the commencement of the action, conveyed the title by deed, but still retained the same, fails to state a cause of action for a resulting trust." (*Hammer v. Hermann*, 11 Okla. 127, 65 Pac. 943.)

The same rule applies to the disposal of and the procuring of title to Indian allotments, except that title to an Indian allotment is conveyed by the certificate of allotment to the same effect as the patent to other public land, but it must not be overlooked that the title remains in the government until the certificate is issued.

Quoting again from *Wallace v. Adams, supra,* we are told:

"The jurisdiction of the Commission and of the Secretary and the effect of their action in the allotment of the lands of the Choctaw and Chickasaw Nations are the same in effect as the jurisdiction and effect of the action of the Land Department of the United States in the disposition of the public lands within its control. The Commission under the direction of the Secretary constitutes a special tribunal vested with the judicial power to hear and determine the claims of all parties to allotments of these lands and to execute its judgments by the issue of the allotment certificates which constitute conveyances of the right of the lands to the parties who it decides are entitled to the property. This tribunal undoubtedly has exclusive jurisdiction to determine such claims and to issue such a conveyance. The allotment certificate when issued, like a patent to land, is dual in its effect. It is an adjudication of the special tribunal, empowered to decide the question, that the party to whom it issues is entitled to the land, and it is a conveyance of the right to this title to the allottee. *U. S. v. Winona & St. Peter R. Co.,* 67 Fed. 948, 955 [15 C. C. A. 96, 103]. Like a patent it is impervious to collateral attack. But, as in the case of

a patent, if the Commission or the Secretary has been induced to issue the allotment certificate to the wrong party by an erroneous view of the law, or by a gross or fraudulent mistake of the facts, the rightful claimant is not remediless. He may avoid the decision and charge the legal title to the lands in the hands of the allottee, as he may that of the grant to a patentee, with his equitable right to it either on the ground that upon the facts found, conceded, or established without dispute at the hearing before the special tribunal, its officers fell into an error in the construction of the law applicable to the case, which caused them to refuse to issue the certificate to him and to give it to another, or that through fraud or gross mistake it fell into a misapprehension of the facts proved before it which had a like effect." *James v. Germania Iron Co.*, 107 Fed. 597, 600, 46 C. C. A. 476.

It appearing that no allotment certificate had been issued at the time of the commencement of this action and from a full and careful examination of the entire record, and upon due consideration of the authorities controlling the case, we are forced to the conclusion that the district court had no jurisdiction of the cause of action, and the case should be reversed.

By the Court: It is so ordered.