## HARNAGE *et al.* v. MARTIN *et al.*

No. 4284. Opinion Filed October 28, 1913.

Rehearing Denied January 27, 1914.

(136 Pac. 154.)

1. **INDIANS—Allotments—Jurisdiction of Courts.** Courts of equity have jurisdiction, after the Commission to the Five Civilized Tribes and the Secretary of the Interior have exercised their powers and exhausted their jurisdiction, to determine whether by error of law, or through fraud or gross mistake of fact, the Commission or the Secretary has failed to allot land in the Cherokee Nation to the citizen, who, under the law and the treaties, was entitled to the same.

2. **SAME—Determination of Contest—Question of Law.** Whether or not there was any evidence to sustain a finding of fact made in a contest before the Commission and the Secretary of the Interior, involving the rights of two different Indians to select certain lands, is a question of law; and an error in that respect, which results in the issuance of a patent to the wrong party, may be remedied by a proceeding in equity.

3. **SAME—Sufficiency of Evidence.** The evidence reviewed, and **held** sufficient to sustain the finding of fact made by the Secretary of the Interior and the Commission in a contest before them.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Action by Jesse L. Harnage and the Delokee Gas & Oil Company against Annie M. Martin and the Roth-Argue-Maire

Bros. Oil Company. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Veasey, O'Meara & Owen,* for plaintiffs in error.

*Robert J. Boone,* for defendants in error.

HAYES, C. J. This is an appeal from a judgment of the district court of Washington county, sustaining a demurrer to the evidence of plaintiffs in error, plaintiffs below, and dismissing their petition and rendering a judgment against them in favor of defendants in error, defendants below.

Plaintiff Harnage and defendant Martin are duly enrolled members of the Cherokee Tribe of Indians, and this suit was brought by Harnage in the court below to charge the lands in controversy with a trust in his favor for the alleged reason that in a contest case before the Department of the Interior, involving the right to select said lands as an allotment, the Secretary of the Interior committed errors of fact and law, by reason whereof he awarded the lands in controversy to defendant Martin as a portion of the allotment to which she was entitled as a member of said tribe of Indians, when, under the facts established and the law applicable thereto, plaintiff contends such lands should have been awarded to him. Plaintiff Delokee Gas & Oil Company claims interest in said land by virtue of a gas and oil lease from its co-plaintiff Harnage. Defendant Roth-Argue-Maire Bros. Oil Company claims a like interest under a similar lease from defendant Martin. It is therefore unnecessary to make further reference to the interests of these two companies in the consideration of the case.

Plaintiff made a part of his petition, and introduced at the trial, all the records in a contest case which was instituted and tried before the Department of the Interior for the purpose of determining whether he or defendant was entitled to select the land in controversy as an allotment. On the 13th day of May, 1904, plaintiff made application to the Commission to the Five Civilized Tribes to have allotted to him the land in controversy, and such application was granted. Thereafter, on the 26th day of May, 1904, defendant made a similar application to the Com-

mission to the Five Civilized Tribes, which was refused, where-
upon, on the same day, she instituted a contest proceeding be-
fore the Commission to the Five Civilized Tribes against the
allotment theretofore made to plaintiff.   The trial before the
Commission to the Five Civilized Tribes resulted in a decision
in favor of defendant in this case, plaintiff in the contest.   From
this decision an appeal was taken to the Commissioner of In-
dian Affairs, where a like decision and judgment was rendered,
which, on appeal to the Secretary of the Interior, was affirmed.
The trial court had before it the entire record and all the evi-
dence upon which the decisions of the Commission to the Five
Civilized Tribes and the Commissioner of Indian Affairs and the
Secretary of the Interior were rendered, and, in addition there-
to, certain additional evidence in the form of depositions, which
need not be noticed here.

Plaintiff urges that the action of the trial court in sustain-
ing a demurrer to his evidence was erroneous, upon three differ-
ent grounds, and for such reason should be reversed.   Under
the view we take of the case, it will be necessary to consider
only the first proposition advanced by plaintiff, which is that
since plaintiff made the first selection of the land in controversy
as a part of his allotment, and such fact appears without dis-
pute in the record before the Secretary of the Interior and in
the evidence before the trial court, and that there being no evi-
dence whatever to the effect that at the time of the prior selec-
tion by plaintiff defendant was the owner of the improvements
of the land in controversy, the court erred in not finding the
issues for plaintiff.   There is no contention that the decision of
the Department of the Interior was fraudulently rendered, or
that any fraud was exercised by defendant in procuring it.   The
power of the courts, where the Department of the Interior has
awarded to a member of the Five Civilized Tribes certain land
as his allotment and patent therefor has been issued to him, to
determine the rights of a contestant to such land was decided in
*Garrett v. Walcott*, 25 Okla. 574, 106 Pac. 848, wherein it was
held that the jurisdiction of the Commissioner of Indian Affairs
and of the Secretary of the Interior and the effect of their ac-

tion on the allotment of the lands of such Indians are the same in effect as the jurisdiction and effect of the Land Department of the United States in the disposition of the public lands within its control. The law applicable to the Land Department and involved in this case is accurately stated in *Howe v. Parker* (C. C. A.) 190 Fed. 738, 111 C. C. A. 466, in the following language:

"The Land Department of the United States is a quasi judicial tribunal, invested with authority to hear and determine claims to the public lands subject to its disposition, and its decisions of the issues presented at such hearings are impervious to collateral attack. But its judgments and patents do not conclude the rights of claimants to the land. They rest on established principles of law and fixed rules of procedure, the application of which to each case conditions its right decision, and if the officers of the Land Department are induced to issue a patent to the wrong party by an erroneous view of the law or by a gross mistake of the facts proved, or by a decision induced by fraud, the rightful claimant is not remediless. He may, in a court of equity, avoid the effect of the decision and the patent, and charge the legal title derived from it with a trust in his favor."

By section 11 of an Act of Congress approved July 1, 1902 (32 U. S. St. at L., p. 716, c. 1375), it is provided that there shall be allotted by the Commission to the Five Civilized Tribes to each enrolled member of the tribe lands equal in value to 110 acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the government survey, *which lands may be selected by each allottee so as to include his improvements.* By section 18 of the same act it is made unlawful, after 90 days after the ratification of the act, for the member of the tribe to inclose or hold in his possession more land in value than 110 acres of the average allottable lands of the Cherokee Nation, either for himself or his wife or for each of his minor children. These provisions of the act clearly contemplate that any member of the tribe shall have a right to select as his allotment lands upon which he owns the improvements, and that his wife and minor children shall have the right to select as their allotments lands upon which he owns the improvements, and that after 90 days after the ratification of the act, the fact that an Indian has there-

tofore owned the improvements and held possession of lands in acreage in excess of what he is entitled to take as allotment for himself, his wife, and his minor children, shall not preclude others from taking such land as their allotment, because it is made unlawful for a member of the tribe, although he owns the improvements, to hold the lands, unless needed as allotment for himself, or his wife and minor children.

Plaintiff in the instant case filed first upon the lands in controversy. Defendant was entitled to prevail in the contest only by showing that she had some preference right to select the lands in controversy as a portion of her allotment; that she was the owner of the improvements and entitled to the benefits of the provisions of section 11, securing her the right to select the lands whereon she owned the improvements as her allotment. It is the contention of plaintiff that there was not any evidence before the department to establish this fact.

Defendant's first contention is that in the absence of fraud the courts cannot inquire as to whether there was any evidence to support the finding of fact of the department upon which the contest case was determined. This contention, we think, is settled by decisions of this court, as well as by the decisions of the federal courts.

In *Jordan v. Smith,* 12 Okla. 703, 73 Pac. 308, it was said:

"So far as the courts are concerned the findings of fact by the land department in a contest proceeding are as conclusive and binding upon the courts as the verdict of a jury in their own tribunal, and the only inquiry the court can make is, Was there any evidence on which to base the finding?"

See, also, *Paine v. Foster,* 9 Okla. 213, 53 Pac. 109.

In *Howe v. Parker, supra,* Judge Sanborn, who delivered the opinion for the court, said:

"Whether or not the weight of evidence in substantial conflict sustains the one or the other side of an issue of fact is a question upon which, in cases within his jurisdiction, the final decision of the Secretary of the Interior is conclusive in the absence of fraud or gross mistake. But whether or not there is at the close of a final trial or hearing before him any evidence to sustain a charge or a finding of fact in support of it is in his

and in every judicial and quasi judicial tribunal a question of law."

In support of this statement of the law numerous authorities are cited. If the Secretary of the Interior in rendering his decision assumed a fact established which was necessary to the rights of the prevailing party, but which there was wanting any evidence to support, the error committed by him was one of law, and plaintiff may have it reviewed by a court of equity in a proceeding brought to avoid the effect of the decision of the Secretary of the Interior.

The facts found in the contest case by the Commission to the Five Civilized Tribes, by the Commissioner of Indian Affairs, and by the Secretary of the Interior, although not stated by these respective officers in the same language, are substantially the same. The land in controversy constitutes part of a large tract known as the Thursday place, and was held at the time of the institution of the contest case, and had been for several years prior thereto, by a family of which Mary Thursday, the grandmother of defendant, is the Indian head. The southern portion of the said place was held and occupied by this family for several years prior to 1893. Whether this portion of the place was originally acquired by the family through purchase or original segregation the evidence is not clear. In 1893 Mary Thursday purchased the improvements upon the northern part of said place, which embraces the land in controversy. She paid therefor the sum of $800, which payment she made out of funds received by her as payments to her as a member of the Indian tribe, and to her grandson, Samuel Bob, the brother of defendant; and a bill of sale was executed by Mary Thursday and said Samuel Bob for said improvements. Both of defendant's parents died prior to 1890. Before their death, for a number of years she and her parents resided with her grandmother, Mary Thursday. Subsequent to her parents' death she continued to reside for a time with her grandmother. Samuel Bob, defendant's brother, continued to reside at the same place until he became of age. Within a year or two after the death of her parents, defendant was stolen from her home with her grand-

mother by a man by the name of Frenchman, by whom she was kept, and with whom she resided until she went away to school. In 1898, when she was about eighteen years old, she married George Martin, her present husband, with whom she has since resided.    Defendant's grandmother, during the time she lived with her, collected defendant's payments from the government to which defendant was entitled as a member of the Indian tribe, and which the grandmother collected as the Indian head of the family, of which defendant was then a member.    During the foregoing mentioned time, one Wallace Thursday, the step-grandfather of defendant, resided at the home of Mary Thursday.    In 1899, about a year after defendant's marriage, while she and her husband were visiting at the Thursday home, her grandmother told her that she need not look elsewhere for lands to allot; that there was sufficient in the home place for her, and that she could select her allotment out of the lands in that place; that the family would remain in possession of the same until time to make the allotment, but that there were sufficient lands there for the grandmother and defendant's brother, Samuel Bob, who had theretofore been a member of the family, and the defendant, and gave her the right to select her allotment out of said place.

The evidence establishes that conversations to the foregoing effect were had between defendant, her husband and the grandmother, or with the step-grandfather at different times. Prior to the time defendant filed her contest, Mary Thursday had selected her allotment in the southern part of the home place, and Samuel Bob had selected his in the northern part, and the land lying between these two allotments was left for defendant, which, when she made application to allot, she found to have already been allotted to plaintiff; and she thereupon instituted her contest. The evidence is conflicting relative to some of the facts stated above, but with the substantial conflict in the evidence this court has nothing to do. It is true that the evidence does not disclose that there was any formal conveyance of the improvements upon the identical land in controversy made by Mary Thursday to defendant; but it is clear from the evi-

dence that Mary Thursday intended, in consideration of the fact that she had collected and expended, in establishing and maintaining the home, moneys to which defendant was entitled and received as a member of the Indian tribe, and out of affection and love she bore for the daughter of her deceased son, to provide for her an allotment, and that she gave to defendant the right to take her allotment out of said lands, and in giving her such right gave her every interest therein necessary to effectuate the allotment, which included the improvements thereon. There was no law that required that such gifts or conveyances óf improvements upon lands of the tribe held by an individual Indian before allotment should be made by written contract or conveyance. After a careful review of the evidence before the Secretary of the Interior, we are of the opinion that it is sufficient to establish that defendant had such an interest in the improvements upon the land in controversy as entitled her, under the provisions of the statute above referred to, to select these lands as her allotment. Plaintiff does not claim that he ever acquired this right from her, or that she ever conveyed it to others.

Other questions are presented by this appeal; but, since our view upon this one question requires an affirmance of the judgment of the lower court, it is unnecessary to consider them.

The judgment of the trial court is affirmed.

All the Justices concur.