## HIGGINS v. WATERS.

No. 4937—Opinion Filed September 12, 1916.
(159 Pac. 1129.)

**1. Indians—Lands—Allotment—Finality.**

The Commissioner to the Five Civilized Tribes, the Commissioner of Indian Affairs, and the Secretary of the Interior are primarily vested with the duty of allotting lands in the Indian Nation to the members of said tribes who show themselves entitled thereto, and the action of said Commissioners or the Secretary of the Interior in making such allotments will not be reviewed or questioned in the courts unless it clearly appears that they have committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they, themselves, were chargeable with fraudulent acts, and that as a result thereof the patent was issued to the wrong party.

**2. Same.**

The courts will not disturb decisions by the allotting powers based purely upon findings of fact from the testimony submitted, where there is no fraud nor apparent error of law in such decisions.

**3. Same**

Record examined, and the findings of fact and conclusions of law approved.

(Syllabus by Mathews, C.)

Error from District Court, Washington County; R. H. Hudson, Judge.

Action by Vinita Higgins, a minor, by Robert L. Higgins, her guardian, against John W. Waters, a minor. Judgment for defendant, and plaintiff brings error. Affirmed.

Sherman, Veasey & Davidson, for plaintiff in error.

John C. Starr and John A. Goodall, for defendant in error.

Opinion by MATHEWS, C. The parties will be designated as in the trial court. This is an action for the purpose of establishing a trust in certain lands described in the petition. Both parties to this action are duly enrolled citizens of the Cherokee Nation, and this action was brought by Robert L. Higgins as guardian for Vinita Higgins, a minor, against John W. Waters, also a minor, to charge the lands in controversy with a trust in her favor for the alleged reason that there was no evidence before the Secretary of the Interior to sustain the findings of said Secretary in a certain contest then pending before the Interior Department, involving the right of each of said parties to have said lands allotted to them, it being there held that the said plaintiff was not in possession of said land, and was not entitled to have the same allotted to her.

It appears that on August 21, 1907, upon the application of the mother of the defendant, the Commission to the Five Civilized Tribes allotted the lands in controversy to defendant. On October 1, 1907, the guardian of plaintiff made application at the same office to have said lands allotted to plaintiff, and said application was refused. On the same day a contest was filed against defendant, and on the 20th day of February, 1910, the Commissioner to the Five Civilized Tribes rendered his opinion adversely to plaintiff's contention. An appeal was taken to the Commissioner of Indian Affairs, and on September 27, 1910, that office handed down its ruling, sustaining the action of the honorable Commissioner to the Five Civilized Tribes. An appeal was then taken to the Secretary of the Interior, and the decision of the said Commissioner there duly affirmed on May 26, 1911. On July 1, 1913, the plaintiff herein, who was the unsuccessful contestant aforesaid, filed her petition in the district court of Washington county, wherein it was alleged that both plaintiff and defendant were duly enrolled citizens of the Cherokee Tribe of Indians, and that the land in controversy was a portion of the lands of said nation, and subject to allotment among the citizens of said nation under the act of July, 1902; that on the 12th day of November, 1906, said plaintiff purchased the improvements on the land in controversy, and at once went into possession of the same and had at all times since said date been in the lawful and undisturbed possession thereof, and was entitled to select the same as her allotment; that on the 21st day of August, 1907, while plaintiff was in possession thereof, the mother of defendant was permitted to file on said lands for said defendant; that plaintiff contested said filing before the several Departments of the Interior and an adverse ruling in each instance was made against plaintiff. Plaintiff then further states her case as follows:

"That one of the material issues of fact in said contest case was as to whether or not this plaintiff was in possession of said land at the time of defendant's filing thereon, as aforesaid, and upon the evidence before said Secretary, a copy of which evidence is attached hereto and made part hereof, as aforesaid, said Secretary found as a fact that this plaintiff was not in possession of said land at the time of defendant's filing thereof; that in making said finding of fact said Secretary of the Interior fell into a gross misapprehension of the facts established by said evidence. and that there was no evidence before said Secretary that this plaintiff was not in possession of said land at said time; that by reason of this gross mistake of fact, said land was awarded to this defendant by said Secretary of the Interior, and a patent therefor issued to defendant, when, under the facts and law of said contest case, said patent should have been to this plaintiff."

The case was submitted to the trial court upon the evidence which had been adduced in the contest before the Interior Department, and a judgment was rendered for the defendant, and the cause is now here on appeal.

The Commissioner to the Five Civilized Tribes is vested with legal authority to hear contests and to determine conflicting rights of claimants to have certain lands allotted to them in the Indian Nation, and the offices of the Commissioner of Indian Affairs and the Secretary of the Interior are the proper forum for the appellate supervision in such matters, and the action of these departments is final, except in certain particulars, succinctly stated in the case of Bell v. Mitchell, 39 Okla. 544, 135 Pac. 1136, Ann. Cas. 1915D, 780, as follows:

"It is the law that where the department has erred in a matter of law, or the losing party before the department had fraud practiced upon him, or the department has committed such gross error that its finding of fact practically amounts to fraud, its action is not final and conclusive upon the court, and that the party who had been wronged by its action may obtain relief. Rector v. Gibbon, 111 U. S. 276, 4 Sup. Ct. 605, 28 L. Ed. 427; James v. Germania Iron Co., 107

Fed. 597, 46 C. C. A. 476; Garrett v. Walcott, 25 Okla. 574, 106 Pac. 848. But the action of the department in its decision in contest cases should not be set aside or disturbed for slight reasons, or merely because of a preponderance of the evidence. See Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800. The Commission to the Five Civilized Tribes was vested with authority to hear contests and to determine conflicting rights of applicants to allot land in the Indian Territory, and it is only in exceptional cases, and under unusual and extraordinary circumstances, that the action of the department should be disturbed."

Again, in the case of Harnage et al. v. Martin et al., 40 Okla. 341, 136 Pac. 154, we find the proposition stated as follows:

"If the Secretary of the Interior in rendering his decision assumed a fact established which was necessary to the rights of the prevailing party, but which there was wanting any evidence to support, the error committed by him was one of law, and plaintiff may have it reviewed by a court of equity in a proceeding brought to avoid the effect of the decision of the Secretary of the Interior."

It is said in Blatz v. Mitchell, 41 Okla. 96, 137 Pac. 666:

"The courts will not disturb decisions by the Department of the Interior based purely upon findings of fact from the testimony submitted, where there is no fraud nor apparent error of law in such department decisions." Garrett et al. v. Walcott et al., 25 Okla. 574, 106 Pac. 848; Robinson v. Owen et al., 30 Okla. 484, 119 Pac. 995; Alluwee Oil Co. v. Shufflin et al., 32 Okla. 808, 124 Pac. 15; Summers v. Barks et al., 36 Okla. 337, 127 Pac. 402; Johnson et al. v. Riddle, 41 Okla. 759, 139 Pac. 1143; Jones et al. v. Fearnow et al., 53 Okla. 822, 156 Pac. 309.

The only proposition presented in plaintiff's brief is that the defendant was in actual and exclusive possession of the land, and had the lawful right to its possession, at the time of the defendant's selection, to wit, August 21, 1907, that there was no evidence whatever to the contrary, and that the land should have been awarded to the plaintiff.

In order to properly decide this proposition it will be necessary to review the evidence, but before doing so we deem it appropriate that we first set out the decision of the Commissioner of Indian Affairs upon the contest between the parties before that department, which, leaving out the introduction, is as follows:

"It appears of record that both the parties hereto were duly entitled to allotment of tribal lands, and that, the land in contest having been set apart to John W. Waters on application made by his mother, August 21, 1907, when Robert L. Higgins applied for the same land on October 1, 1907, at the Cherokee land office, his application was denied, and he thereupon filed his complaint herein, duly verified, alleging that when the land was selected for the contestee the contestant was in possession thereof and owned certain valuable improvements thereon, but the contestee never owned any improvements on the land, nor was in possession of any part of it. Contestant appeals, charging error in your findings of fact and conclusions of law.

"The land had been held and improved by one Edwards, whose application for enrollment as a citizen by intermarriage was denied. At the hearing contestant produced a bill of sale from Edwards dated November 12, 1906, purporting to convey to him as guardian the improvements on the land, for a consideration of $1,500, and containing this sentence: 'In the event that Congress makes a law that the white adopted citizens of the Cherokee Nation can hold their allotments by paying for them, then this bill of sale is to be null and void, otherwise to remain in full force and effect.'

"Higgins also produced two rental contracts whereby he assumed to let the land to one J. A. Jeter for the years 1907 and 1908 at $200 a year, and three receipts, signed by W. S. Edwards, acknowledging payments by Higgins of $100 on January 1, 1907, $100 August 1, 1907, and $200 June 27, 1908. Edwards and Higgins testify that the former was to receive $200 from the rents annually for ten years and that the payments mentioned were made by Jeter to Edwards direct, in compliance with that contract. Jeter corroborates their statements. He has been cultivating the land for several years as Edwards' tenant, and continued on without change, professing to recognize Higgins as his landlord, but doing no business with him whatever.

"Counsel argue ingeniously that this transaction was a bona fide sale of improvements, vesting the ownership in contestant and carrying with it the right of possession of the land, subject only to the possibility of becoming null and void at some future time if a certain event should happen, which in fact did not happen. They suggest that the land was selected for contestee through a violation of the regulations by failure to inquire respecting ownership of the improvements. This point is not borne out by the record. Contestee's father testifies that he and his wife who made the application, visited and looked at the land, and inquired about it of the people in the neighborhood. It was well known that it had long been held by a non-citizen, there was no record or publication of any sale of the improvements, and it lay open to be filed upon by any qualified person.

"The distinction insisted upon between this case and the cases of Phillips v. Brown and Phillips v. Bird, is found to be a distinction without a difference. In those cases no consideration was to be paid to the vendor of improvements unless the land should be awarded to the vendee. In this case the vendee

pays nothing from his own means or resources whatever, and the vendor asserts that if the land should not be awarded to the vendee, he would not look to him for payment. but to the person who should obtain it. In fact the vendee's relation to the land has been merely nominal, while the vendor's has remained practically unchanged.

"The claim that the paper transaction described was anything more than an arrangement to control the allotment falls before Edwards' assertion, March 19, 1907, when he applied for the appraisal of his improvements, that when he was starting on a trip to Texas he got Higgins to file one of his children on the land, contingent on his being able to buy it himself, and his testimony given March 5, 1909, that as late as July or August, 1907, he was still trying to get some one to file on the land, with a view to buying it from the allottee, having an understanding with Higgins that if he succeeded, they would 'rescind the trade, and if not this trade will go on.'

"Your conclusion is that the contestant has failed to establish that the transaction whereby he claims to have gained the ownership and possession of the land in controversy contained the elements of good faith necessary to vest in him a proper right as against the prior application of the contestee. To controvert this proposition counsel for appellant discuss at length the principle of 'the condition subsequent,' the doctrine of fraud and bona fides, the prevalence of the written instrument over verbal modifications. They insist that in this case there is no question but either party could go into court and enforce the contract of sale; that as the bill of sale is plain and unambiguous, it is the best evidence of the intent of the parties, and of the amount the purchasers agreed to pay for the improvements. Such confidence is hardly justified by the facts of record in your office and revealed by contestant's testimony. Higgins would have a very strong defense against any attempt by Edwards to enforce such a contract. The consideration stated in the bill is $1,500. Higgins testified March 25, 1907, about four months after the date of the bill: 'I didn't pay him anything. We was to appraise the improvements by disinterested parties, and I was to give him whatever the actual value was. He put the consideration in there, inasmuch as he said there ought to be a consideration in there. * * * I am still willing to do that, but I don't want to have to pay more than it is worth. * * * Looking over it carefully with another party. we estimated that $250 or $300 would be worth all the improvements. The fencing is pretty well broken down, and there is a little log house, rather sorry house. I had a disinterested party make an estimate. and he thought $300 would be about right.'

"Higgins also testified, and your records show, that in a separate contest the 20 acres, which contained the house, barn, and wells, apparently all the improvements covered by the bill of sale, except part of the fence, had been lost to Higgins or to Edwards, and awarded to one Jane Hill. In view of these conditions, it cannot be maintained that: 'Higgins was responsible to Edwards for $200 every year; that if the tenant failed to pay or threw up the lease, Higgins was obliged to pay the $200 just the same'—for ten years. But whether enforceable or not by the parties themselves against each other, such a document cannot defeat established rights of third parties, unless it appears that it represents actual facts, vital reality. Here counsel adduce the principle that fraud must be proved by clear, explicit, and convincing evidence. But contestant has not shown such conditions as to make that proof incumbent on the defense. The doctrine stated in the case of Hy-Yu-Tse-Mil-Kin v. Philomene Smith et al., 194 U. S. 401, 24 Sup. Ct. 676, 48 L. Ed. 1039, applies exactly, as follows: 'Upon the attacking party rests the burden of proof. * * * It is the duty of these contestants to affirmatively show such a state of facts as will necessitate the canceling of the allotments already made. It was not even incumbent upon the defendant to enter an appearance; had they not done so, it would have been no less the duty of these contestants to present the requisite showing of superior rights.'

"In the present case contestant has so clearly shown by his own testimony that the bill of sale was purely fictitious and his occupancy of the land purely nominal that he can take no advantage of the rule quoted from the Assistant Attorney General's opinion of January 24, 1907, to the effect that citizen purchasers from inter-married claimants 'acquire as secure right to their holdings as if they had originally segregated the same from public domain, and are entitled to take such lands in allotment, providing their occupancy antedates the application of any other person to select the same tract.' Rather he is barred by this concluding sentence of the same paragraph: 'But the right of no citizen to file an application to select, should be stayed or suspended merely for the benefit of the non-citizen; otherwise the latter and not the law will create the preference right and control the allotment.'

"Waters and his wife viewed the land in controversy. They knew, and it was publicly known, that it was held by a noncitizen. It was unoccupied in the sense of the law. They filed upon it for their child, a Cherokee citizen entitled to allotment. They complied with all the requirements stated to them at your land office. They were ready, and are ready, to pay to the noncitizen occupant the appraised value of his improvements. Their rights cannot be set aside by reference to a paper transaction to which (though it may in part antedate their filing) there were no correspondent facts. That alleged contract can at best be interpreted merely as an executory agreement. The tenor of the testimony throughout is convincing that it was held by the parties themselves, till the contestee filed

upon the land, as incomplete and voidable or modifiable at any time. When Edwards applied for appraisement March 19, 1907, he represented the alleged sale as altogether contingent, its terms as yet unsettled. On March 5, 1909, Edwards testified, 'I allow Higgins what Jeter pays me,' and, being asked whether, when he was trying to get some one to file on this land (in the summer of 1907), Jeter had paid him any rents for which he had given Higgins credit, he answered 'Yes; he did, in the fall of 1907.' At the hearing of May 25, 1909, Higgins could not remember whether the receipt dated January 1, 1907, had been given or sent to him before or after March 2d, but on June 4, 1907, in the Jane Hill Case, when asked if the tenant paid him the rent he answered, 'I am to get the rent this year.'

"In the opinion of this office the agreement in question was not sufficiently executed to pass title between the parties. Your decision is accordingly affirmed. You will please notify the parties in interest of this action, and contestant of his right of further appeal.

"Very respectfully,

"[Signed] F. H. Abbott,
"Assistant Commissioner."

We have carefully read all the evidence introduced before the Commissioner to the Five Civilized Tribes in this contest, and we find the above review of the same by the honorable Commissioner of Indian Affairs to be fair and accurate, and his deductions therefrom fully supported by the evidence. The evidence shows conclusively that plaintiff, Higgins, had never been in actual possession of the land in controversy, and the only claim she had upon the land or improvements thereon was based upon a conditional and contingent sale to her by one W. S. Edwards, an intermarried citizen, who had placed the improvements on the land and rented the same to one Jeter, and plaintiff, by virtue of this arrangement with Edwards, claims that she thus acquired the ownership of said improvements and was in possession of the land by tenant. But the honorable Commissioner found that such ownership of the improvements and possession of the land did not exhibit the elements of good faith necessary to segregate the land from the claims of bona fide allottees, and we concur in his conclusion therein. His reasons are fully set out in his opinion, copied above, reviewing the evidence. It covers the case fully. All the deductions therein are fair and warranted by the evidence.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.