## COLBERT v. PATTERSON.

No. 10217—Opinion Filed Sept. 13, 1921.

Rehearing Denied Oct. 25, 1921.

(Syllabus.)

1. **Indians — Allotments — Finality of Decisions of Federal Tribunals.**

The Commissioner to the Five Civilized Tribes, the Commissioner of Indian Affairs, and the Secretary of the Interior are primarily vested with the duty of allotting lands to members of the Five Civilized Tribes who show themselves entitled thereto, and their action in making such allotments will not be disturbed by the courts, unless it clearly appears that such officers have committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they were chargeable with fraud, or committed such gross error in their findings of fact that such findings practically amount to fraud.

2. **Same—Fraud or Error of Law—Jurisdiction of Courts.**

The courts will not disturb the decision of the Department of the Interior in a contest proceeding based purely upon findings of fact from the evidence submitted, where no fraud or error of law is shown.

3. **Same—Decisions of Commission to Five Civilized Tribes.**

The Commission to the Five Civilized Tribes was a quasi judicial body, and had power, as between claimants for the same land, to determine to which it should be allotted, and its findings of. fact, if there is evidence to support them, are binding upon the courts, and in the absence of fraud or error of law the only inquiry the court can make is, Was there any evidence upon which to base such findings?

Error from District Court, Pittsburg County; R. W. Higgins, Judge.

Action in ejectment by Willie Patterson against Jim Colbert. Judgment for plaintiff, and defendant brings error. Affirmed.

J. S. Arnote, for plaintiff in error.

I. P. Keith, for defendant in error.

NICHOLSON, J. This is an action in ejectment brought by the defendant in error, as plaintiff below, against the plaintiff in error, as defendant below, in the district court of Pittsburg county. The parties will be hereafter referred to as they appeared in the trial court.

It is alleged in the petition that the plaintiff is the owner of the north half of the northeast quarter of section 10, township 5 north, range 16 east, lying and situate in Pittsburg county, Oklahoma, by virtue of an allotment patent issued to him and dated the 5th day of December, 1907; that plaintiff is a Choctaw freedman and a citizen of the Choctaw Nation; that he is entitled to the possession of said land, and that the defendant unlawfully keeps him out of the possession thereof; and prayed judgment for the possession of said land.

The defendant answered, denying all the allegations of said petition except such as were expressly admitted, and admitted that

the land was allotted and patented to the plaintiff, but averred that at the time the land was allotted to the plaintiff, defendant was in possession of the same and entitled to have the same allotted to him; that he contested the right of said plaintiff to said land, but that the Commissioner to the Five Civilized Tribes, through an erroneous and gross misconception and mistake of the facts and of the law, decided the contest against him and in favor of the plaintiff, and patent was issued to said plaintiff; that as a matter of law, said patent was illegally issued to said plaintiff and plaintiff held the record title to said lands in trust for said defendant, and prayed that the plaintiff take nothing, and that the court decree that said plaintiff held the title to said lands in trust for said defendant, and that he be required to convey the same to said defendant, and in the event of his failure so to do, that the court decree the legal title to said land in the defendant, and that plaintiff and those claiming under him be enjoined from asserting any right, title, claim, or interest in or to said land, or any part thereof; and afterwards filed an amendment to this answer, by which he attached to said answer as exhibits, copies of the record in said contest proceedings. The trial court rendered judgment for the plaintiff, from which the defendant appeals and urges that the Commissioner to the Five Civilized Tribes, in awarding the land in controversy to the plaintiff and in not awarding it to the defendant, did so in error of law, and in gross error of the facts.

The finding and proceedings of the Commissioner to the Five Civilized Tribes in the contest proceedings are attached to the answer, and are as follows:

## "Finding and Decision.

"After an investigation of the record in the possession of this office, and due consideration of the pleadings and evidence in this case, it appears as follows:

## "Statement of Record.

"That Jim Colbert, the contestant, is a freedman of the Chickasaw Nation; that Willie Patterson, the minor contestee, is a freedman of the Choctaw Nation; and that each is entitled to an allotment of the lands of the Choctaw and Chickasaw Nations.

"That on April 7, 1905, Netta Meggs appeared at the Choctaw Land Office and made application for the land in controversy herein for her minor son, Willie Patterson, and the same was, by the Commissioners to the Five Civilized Tribes, set apart to the said Willie Patterson, as a portion of his allotment selection.

"That on October 5, 1905, Jim Colbert appeared at the Choctaw Land Office and made application to have the land in controversy herein set apart to himself, as a portion of his allotment, and the same having been theretofore selected, as herein stated, the said Jim Colbert was so notified by the Commissioner, and his application for said land was, therefore, refused.

"That on October 5, 1905, Jim Colbert, the contestant, filed herein his complaint duly verified.

"That on October 7, 1905, this cause was set for trial on November 22, 1905, at nine o'clock a. m. and notice of contest and summons issued to contestee.

"That on November 22, 1905, return of notice of contest and summons was filed, service on the minor contestee, Willie Patterson, on October 13, 1905, by delivering a copy thereof to Netta Meggs, his mother and natural guardian, who had said minor in charge.

"That on November 22, 1905, this cause was called for trial. Contestant appeared in person; contestee appeared by his mother, Netta Meggs. Both parties announced ready, whereupon a hearing was had and concluded, and the cause taken under advisement.

## "Findings of Fact and Conclusion.

"It appears from the evidence in this case that one John Gates (or Gaides) was at one time, prior to the contestee's filing herein, the owner and in possession of the improvements upon the land in controversy, consisting of a house, and about six acres of cultivated land under fence, situated upon the west forty of the eighty acres in controversy. In January, 1905, this was the only cultivated land and improvements upon any of the land in controversy, and it is not claimed that Gates (or Gaides) was ever in possession of any of the east forty, or had any improvements thereon.

"Contestant's claim is that in January, 1905, this Gates (or Gaides) made a contract of sale with contestant, whereby the house and improvements, then on the land in controversy, were transferred to contestant.

"The evidence offered in behalf of this contention is the testimony of the contestant himself; that of one William Phoebus; a bill of sale (Exhibit 'B') to contestant, signed by 'John Gaides', dated October 2, 1905, and conveying a house and six acres of cultivated land on the south half of the northeast quarter of section 10, township 5 north, range 16 east, which is the eighty acres immediately south of the land in controversy; and an affidavit (Exhibit 'A') signed by 'John Gates,' called in the evi-

dence, and admitted as a contract, but bearing date November 17, 1905, and being nothing more than an affidavit to the effect that on Jan. 17; 1905, the said John Gates had sold to contestant all the improvements, consisting of six acres in cultivation, one two-room house, and fences on the land in controversy.

"All of this evidence as to the sale is very unsatisfactory. That of the witness Phoebus relates to a conversation had with Gates (or Gaides), in February, 1905, in which Gates told witness that he had sold the land in controversy to the contestant, and is, therefore, hearsay in its nature. The bill of sale does not describe the land in controversy, has been once altered, and, in any event, is no evidence that there was an actual sale in January, 1905. It is material and necessary that the sale should be shown, before the date of the contestee's filing, and also that contestant actually went into possession, because it does not appear from the records of this office that John Gates (or Gaides) was a citizen or freedman of the Choctaw, or Chickasaw Nation, or entitled to hold lands therein. If the said Gates (or Gaides) is a citizen, as testified upon the trial, he must be enrolled under another name, and the same evidence which would justify the commissioner in treating the case as though he were a citizen shows that prior to the date of the pretended sale to contestant in January, 1905, the said Gates had taken his full allotment in the Chickasaw Nation. If a citizen, he was therefore an excessive holder, after so selecting his allotment, and the evidence as to the sale and the actual possession of contestant before contestee's filing must be as satisfactory as though Gates were a non-citizen.

"The affidavit of John Gates, introduced in evidence, was not admissible as a contract, for obviously it is not such; nor in default of an explanation of Gates, absence from the trial, should it be given any weight as evidence.

"It was testified by contestant that he never personally went into possession of the west forty acres where the improvements sold by Gates were located. The contestant testified that he bought from Gates in January; that it was agreed that Gates might stay on the land until October and take off the crop that he had on the six acres, and that before that time the contestant was to pay him and the bill of sale was to be made in October; that in April contestant finished paying for the improvements and on October 2, 1905, the bill of sale was executed, but that one of Gates' children was then sick and Gates did not want to move for a month, and contestant let him stay on; and that he was still there on the west forty at the time of the trial on November 22, 1905.

"The only competent evidence as to the sale in January, 1905, is the testimony of the contestant, himself. This is not only not corroborated by any competent evidence, but almost all of that introduced in his behalf rather tends to refute his testimony as to the sale. Even the act of contestant in going upon the east forty in April or May, and building a log house and cow-lot there, is hardly consistent with his present claim, that he was then the owner and would, on October first, come into possession of a house with stables and other improvements near the center of the west forty, and on the only piece of cultivated ground in the entire eighty acres in controversy.

"The burden of proof in these contests is always upon the contestant to show that his right in the land had vested prior to contestee's filing, and in cases where the transfer is claimed from a non-citizen, or from a citizen who has completed his allotment and is an excess holder, the commissioner will closely scrutinize the evidence as to the transfer and the date thereof. And where, as in this case, the testimony is only of a verbal contract, the knowledge of which is locked in the breasts of two men: when one of them, for no apparent reason, fails to appear and testify; when no physical change in possession can be shown, and there is no evidence of any such change as could possibly be notice to anyone of the rights of any persons other than the actual occupant; when there is no writing, evidencing a contract of sale at the date relied upon, or explaining the continued possession of the non-citizen or excessive holder, and when the character of testimony, other than the bare assertion of the contestant, is not only consistent with the hypothesis that the sale, if there was any, was subsequent to the contestee's filing, but rather corroborative of that hypothesis, the commissioner cannot hold that the contestant has satisfactorily sustained the burden of proof cast upon him.

"The commissioner is, therefore, of the opinion that the contestant has not shown that he purchased the improvements prior to the contestee's filing, and is, therefore, of the opinion that the land in controversy, at least as to the west forty acres, being in the possession of Gates, who was either a non-citizen, or an excess holder who had completed his allotment selection, was public domain and subject to selection by the contestee.

"The contestant's claim as to the east forty, of which Gates never had possession, must be further examined, because contestant claims that he personally went into possession of, and made improvements on this forty. If he did so prior to contestee's filing, the contestant's rights would be superior to the rights of the contestee as to the east forty, independent of any transfer of the land to him.

"It does not seem that the commissioner would be justified, even from the evidence

of the contestant himself, in finding that there was such possession at the time stated. It appears that there was such possession at the time stated. It appears that the only improvement ever put on this east forty was a one-story log house with a cowlot. It does not appear from the evidence where on the forty these were located. In one place, contestant testified that from January, 1905, he was working upon the east forty for himself. He did not, however, say what he did, and later in the testimony, in response to the question—'You said (you built the improvements) in January?' Answer.—'Well, me and my wife was there; I commenced on it sometime in April or May, and I think I finished it up about the last of July.' And he testified that he moved onto the land in controversy in July. Previous to that time he had been living in the immediate vicinity on the Daniel Barnes place.

"The contestant's witness, Phoebus, stated that the improvements were put on the east forty 'during the spring some time.' That he 'saw Mr. Colbert there at work building a house—I don't remember the dates.'

"The commissioner is not satisfied that contestant has sustained the burden of proof in establishing that he had possession of, or made any improvements on the east forty prior to April 7, 1905, the date of the contestee's filing.

"The mother of the minor contestee filed upon the land as public domain. She testified that she was taken over the land, and did not see any improvements, but could not say positively that there were none. She claimed that when she went out to see the land before the filing, the contestant marked a plat for her, and told her to file on the two forties marked, as there were no improvements thereon, and that she filed on the forties marked by contestant. She did not produce the plat. Contestant admits that he marked a plat, but says that he marked the land in the northwest corner of section ten, adjoining the land in controversy, and on which there were no improvements.

"The testimony of the two witnesses on this point is in direct contradiction, and if the other testimony in the case showed that the contestant's right had already vested, the commissioner might not be inclined to hold that contestee had proven a consent by contestant that contestee might file on the land, or that, he had established an estoppel against contestant. But in view of the conclusions of the commissioner on the other phase of the case, a decision on this point is unnecessary.

"The commissioner is, therefore, of the opinion that the land in controversy should be allowed to remain a portion of the allotment selection of the minor contestee.

**"Judgment.**

"It is therefore ordered and adjudged that the north half of the northeast quarter of section ten, township five north, range sixteen east of the Indian Meridian, containing eighty (80) acres and being the land in controversy in Choctaw Allotment Contest No. 1214, be and remain a portion of the allotment selection of Willie Patterson, the minor contestee therein; and that the records of the Choctaw Land Office be made to conform in all things to this decision."

By section 29 of the Atoka Agreement, 30 Stat. at L. page 495, it is provided:

"* * * That each member of the Choctaw and Chickasaw Tribes, including Choctaw and Chickasaw freedmen, shall, where it is possible, have the right to take his allotment of land, the improvements on which belonging to him, and such improvements shall not be estimated in the value of his allotment. * * *"

And by section 11 of the Supplemental Choctaw and Chickasaw Treaty approved July 1, 1902, 32 Stat. at L. 641, pertaining to the allotment of lands to members of the tribes and freedmen, it is provided:

"* * * Which lands may be selected by each allottee so as to include his improvements. * * *"

The object and purpose of these provisions in the treaties was to permit the allottee to retain the home he had builded and occupied upon the unallotted lands, and by section 25 of the Supplemental Treaty, supra, allottees might appear before the Commissioner to the Five Civilized Tribes at the land office in the nation in which his land was located and make application for his allotment and for allotments for members of his family and other persons for whom he was lawfully authorized to apply for allotments, and if he should not have selected his allotment within twelve months after the date of the opening of said land offices in said nation, then the Commissioner to the Five Civilized Tribes might immediately proceed to select an allotment, including the homestead, for such person, said allotment and homestead to be selected as the commission might deem for the best interest of said person, and the same should be of the same force and effect as if such selection had been made by such citizen or freedman in person.

Defendant did not appear at the land office and make application for the land in controversy within the time provided, and thereafter the commission allotted other lands to him the patent to which he returned to the commission, and retain possession of the lands in controversy.

It appears from the record in the trial court that the officers of the Interior Department removed the defendant from the land in controversy on at least two occasions, but each time he returned and has kept the plaintiff out of possession. In Higgins v. Waters, 60 Okla. 209, 159 Pac. 1129, this court held:

"The Commissioner to the Five Civilized Tribes, the Commissioner of Indian Affairs, and the Secretary of the Interior are primarily vested with the duty of allotting lands in the Indian Nation to the members of said tribes who show themselves entitled thereto, and the action of said commissioners or the Secretary of the Interior in making such allotments will not be reviewed or questioned in the courts unless it clearly appears that they have committed some material error of law, or that misrepresentation and fraud were practiced upon them, or that they, themselves, were chargeable with fraudulent acts, and that as a result thereof the patent was issued to the wrong party." Rector v. Gibbon, 111 U. S. 276, 28 L. Ed. 427; James v. Germania Iron Co., 107 Fed. 597, 46 C. C. A. 476; Garrett v. Wolcott et al., 25 Okla. 574, 106 Pac. 848; Bell v. Mitchell, 39 Okla. 544, 135 Pac. 1136, Ann. Cas. 1915 D, 780.

But the court will not disturb the decision of the Department of the Interior based purely upon findings of fact from the evidence submitted, where no fraud or error of law is shown. Higgins v. Waters, supra; Garrett v. Wolcott et al., supra; Robinson v. Owen et al., 30 Okla. 484, 119 Pac. 995; Alluwee Oil Co. v. Shufflin et al., 32 Okla. 808, 124 Pac. 15; Summers v. Barks et al., 36 Okla. 537, 127 Pac. 402; Johnson et al. v. Riddle, 41 Okla. 759, 139 Pac. 1143; Jones et al. v. Fearnow et al., 53 Okla. 822, 156 Pac. 309.

We have examined the record and have read the evidence adduced at the hearing of the contest, and can find nothing indicating fraud on the part of the plaintiff, neither do we find that the Commissioner to the Five Civilized Tribes erred as a matter of law, or committed such gross error in his finding of fact that such finding practically amounts to fraud. The findings and conclusions of the commissioner show that he recognized the rights of the defendant to have the land allotted to him, if he was in fact the owner of the improvements thereon prior to or at the time the land was allotted to the plaintiff, but the commissioner held as follows:

"The commissioner is therefore, of the opinion that the contestant has not shown that he purchased the improvements prior to the contestee's filing, and is, therefore,

of the opinion that the land in controversy, at least as to the west forty acres, being in the possession of Gates, who was either a non-citizen, or an excess holder who had completed his allotment selection, was public domain and subject to selection by the contestee.

"The commissioner is not satisfied that contestant has sustained the burden of proof in establishing that he had possession of, or made any improvements on the east forty prior to April 7, 1905, the date of the contestee's filing."

It is not within the province of this court to weigh the evidence adduced on the hearing of the contest. The Commission to the Five Civilized Tribes was a quasi judicial body, and had power, as between claimants for the same land, to determine to which it should be allotted, and its findings of fact are as binding upon the courts as a verdict of a jury in their own tribunal, and the only inquiry the court can make is, Was there any evidence upon which to base such findings? Jordan v. Smith, 12 Okla. 703, 73 Pac. 308; Payne v. Foster et al., 9 Okla. 213, 53 Pac. 109; Harnage v. Martin, 40 Okla. 341, 136 Pac. 154; Bozarth v. Mitchell, 59 Okla. 60, 157 Pac. 1051; Higgins v. Walters, supra. The cours are not vested with a supervisory power over the acts of the officers of the Interior Department on mere questions of fact presented for their determination; as was said in Quinby v. Conlan, 104 U. S. 420, 26 L. Ed. 800:

"It would lead to endless litigation and be fruitful of evil if a supervisory power were vested in the courts over the action of the numerous land departments, on mere questions of fact presented for their determination. It is only when those officers have misconstrued the law applicable to the case, as established before the department, and thus have denied the parties rights which, upon a correct construction, would have been conceded to them, or, where misrepresentations and fraud have been practiced necessarily affecting their judgment, that the courts can, in proper proceedings, interfere and refuse to give effect to their action."

We cannot say that there was no evidence upon which to base the findings of the commissioner, neither can we say that the commissioner was not justified in doubting the evidence of the defendant in regard to the purchase by him of the improvements prior to the time the land was allotted to the plaintiff; but on the contrary, from this evidence the inference might reasonably be drawn that the purchase of the improvements, if made, was made after the land had been allotted to the plaintiff, and

if this be true, the defendant was not entitled to the land.

The defendant did not appeal from the decision of the Commissioner to the Five Civilized Tribes to the Secretary of the Interior, as he had a right to do, but, without exhausting his remedy before the Interior Department, sought the aid of a court of equity in an effort to avoid the decision of the commissioner. As to whether or not it was necessary for him to exhaust his remedies before the department before resorting to the courts, we express no opinion, inasmuch as the decision of this question is not necessary to a final determination herein.

Failing to detect any reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and JOHNSON, McNEILL, ELTING, and KENNAMER, JJ., concur.