## SMITH et al. v. KENNEDY.

No. 9603—Opinion Filed Nov. 22, 1921.

Rehearing Denied Jan. 10, 1922.

Leave to File Second Petition Rehearing

Denied March 7, 1922.

(Syllabus.)

1. **Appeal and Error—Subsequent Appeals —Law of the Case.**

The general rule is that all questions open to dispute, either expressly or by necessary implication decided on appeal in this court, will not be open for review on second appeal, but such decision becomes the settled law of the case as to all of such questions and they are not subject to re-examination. Held, said rule is not applicable to the facts and pleadings in the case at bar.

2. **Public Lands—Decisions of Officers—Finality.**

The general rule is, where officers of the land office decide controverted questions of fact in the absence of fraud or mistake, their decisions on these questions are final, except as they may be reversed on appeal in that department.

3. **Partnership—Sale of Partnership Realty to Satisfy Firm Debts—Rights of Surviving Partner.**

The general rule is that real estate of a partnership is considered as personalty for the purpose of paying the debts of the firm and the settlement of its affairs, and the surviving partner, as between himself and the heirs of the deceased partner, has a right to sell the real estate belonging to the firm in the same manner as if it were personal

estate, although the surviving partner alone cannot transfer the legal title to the real estate, but a deed by him will operate to transfer the equitable interest from him to the purchaser, who may then compel a conveyance from the heirs of the deceased partner.

### 4. Quieting Title—Judgment—Sufficiency of Evidence.

From an examination of the record, held: That the finding and judgment of the trial court were not clearly against the weight of the evidence, and therefore will not be disturbed on appeal.

Error from District Court, Sequoyah County; John H. Pitchford, Judge.

Action by James A. Smith and others against A. J. Kennedy, for interest in land. Judgment for defendant, and plaintiffs bring error. Affirmed.

Geo. S. Ramsey, Edgar A. deMeules, Malcolm E. Rosser, and Villard Martin, for plaintiffs in error.

T. P. Winchester, for defendant in error.

McNEILL, J. This is the second appeal in this case; the case on former appeal being Smith v. Kennedy, 46 Okla. 493, 149 Pac. 197. The question involved on the former appeal was whether the petition stated a cause of action; a demurrer having been sustained to the petition by the trial court. This court reversed the trial court and held the petition stated a cause of action. The material parts of the petition are set out in the statement of facts in the former opinion, and it will serve no useful purpose again to copy the petition in this case, but reference may be had to the same for the allegations of the petition in this case.

After the reversal of the case the defendant filed his answer, which consisted of a general denial, and alleged the improvements placed upon the lots prior to the time said lots were scheduled were property of the partnership of Blackstone & Co., and pleaded the proceedings had before the different departments in relation to obtaining the deed since September 15, 1908. The proceedings disclosed upon what theory the department issued the deed, and why the deed was made to the surviving partner as partnership property. It was also pleaded that those proceedings were never appealed from, and were res adjudicata.

On the trial of the case the records of the Commissioner to the Five Civilized Tribes were introduced, together with the proceedings before the Secretary of the Interior and the decisions of those officers relating to the land in controversy, together with oral testimony.

Upon trial of the case the court found the issues in favor of the defendant and against the plaintiff. The court found, in substance, first, that C. W. Turner and Pleasant N. Blackstone entered into a partnership in the year 1888 or 1889 under the style of Blackstone & Co. In the year 1898 they disposed of the mercantile business in Vian to the Vian Trading Co., retaining their interest in the real estate, with the exception of the building used as a store building. The court further found in relation to the real estate in question that they improved the lots in controversy out of partnership funds, and when the time came to schedule the lots preparatory to their sale A. J. Kennedy appeared for the town-site commission, acting for Blackstone and Turner, and sought to have the lots in question scheduled to Blackstone and Turner as partners, but was informed by the town-site commissioners that the lots could not be scheduled in the name of the firm, and the lots were scheduled to C. W. Turner and P. N. Blackstone. After the schedule was attempted to be changed Blackstone died, and the lots were scheduled to Turner and the heirs of Blackstone. The court further found that the only right either party had to any of the lots was by reason of the improvements placed upon the lots by Blackstone & Co., and no improvement was placed upon the same individually either by Blackstone or Turner. The court further found that the firm of Blackstone & Co. was indebted and was insolvent. The court further found that the deed to the lots was issued to Turner as surviving partner of Blackstone & Co., and Turner afterwards sold the lots to Kennedy for the purpose of applying the same upon the indebtedness of Blackstone & Co. The court found that the plaintiffs, or the Blackstone heirs, had made certain payments to the government upon the lots, in the total sum of $630.18. The court in rendering judgment denied the plaintiffs any relief in so far as the title to the property was concerned, but held they had a first lien upon the property for the payments made, to wit, the sum of $630.18.

For reversal, it is first contended the court should have sustained the demurrer to the answer of the defendant, basing its conclusion upon the fact that the opinion in the former appeal is the law of the case and following the decisions of this court which announce the rule:

"Generally all questions open to dispute and either expressly or by necessary implication decided on appeal to this court, will

not be open for review on a second appeal, but such decision becomes the settled law of the case as to all such questions, and not subject to re-examination." Childs v. Cook, 68 Oklahoma, 174 Pac. 274; Ezell v. Midland Valley R. Co., 73 Oklahoma, 174 Pac. 781; Nance v. Fouts, 68 Oklahoma, 173 Pac. 1038.

We do not think this position is well taken, for the reason that in the first appeal this court was passing upon whether the petition stated a cause of action. If the answer had admitted the allegations in the petition to be true, then the law would be applicable; but the answer denied the allegations of the petition and alleged a different state of facts, alleging the improvements that were placed upon the lots prior to the time of scheduling the same were partnership property, and the Secretary of Interior had so found. The answer referred to additional proceedings before the department, not referred to in the petition.

In the former opinion this language will be found:

"Does the petition state facts sufficient to constitute a cause of action? We think it does. From the foregoing statement of facts it appears that the contest of Turner to have this land declared partnership assets was, in fact, rejected by the Commissioner of Indian Affairs on the very apparent ground that the department could not administer the equities in this case between the heirs of Blackstone and the creditors of Blackstone & Co. The secretary also directed the deed to issue to Clarence W. Turner and the heirs of Pleasant N. Blackstone, by his letter of September 15, 1908. Without further hearing, as far as this record discloses, or without any additional notice to the Blackstone heirs, the deed was issued to Clarence W. Turner as surviving partner of Blackstone & Co. This deed, it is true, was approved by the Secretary of the Interior, but the record is silent as to why this change was made."

In addition to the facts alleged in the petition, the additional records and proceedings were introduced in evidence in the trial of the case. In addition to what was alleged we have the additional facts. On February 6, 1908, John G. Wright, Commissioner to the Five Civilized Tribes, in passing upon the contest of Clarence W. Turner, wherein he was contesting the scheduling of said lots, one-half to himself and one-half to the heirs of Blackstone, after considering each step taken relating to the land, used the following language:

"It would, therefore, appear that the possessory right to the lots and the improvements were owned by the copartnership as such, and not by the members of the firm individually when the original schedule of Vian was being made. This conclusion is supported by the fact that the lots were originally scheduled, as above stated, to 'Clarence W. Turner and Nip Blackstone,' this being the usual manner of scheduling lots to a copartnership."

The commissioner, however, ordered that the lots be scheduled to Clarence W. Turner and the heirs of Pleasant N. Blackstone. On February 10, 1908, Turner appealed from this order. On July 18, 1908, the acting Commissioner of the Department of Indian Affairs decided the contest in favor of Turner, and used the following language:

"The office does not concur in your recommendation that the above lots should be scheduled to 'Clarence W. Turner and the heirs of Pleasant N. Blackstone,' but direct that above lots be scheduled 'Clarence W. Turner and Pleasant N. Blackstone,' an undivided one-half interest in each as members of the firm of Blackstone & Company, and it is so ordered."

No appeal was taken from this order. On August 27th the Commissioner to the Five Civilized Tribes asked the Secretary of the Interior for instructions regarding the wording of the granting clause in the patent conveying the lots in controversy as directed in above order. On September 6, 1908, the Acting Secretary of the Interior suggested that the patent read "To Clarence W. Turner and the heirs of Pleasant N. Blackstone." On September 24, 1908, the attorney for Turner protested against the suggestion, and on January 5, 1910, the heirs of Blackstone protested against the request of Turner as to the wording of the deed. On January 25, 1910, the letter of Baggs (who represented Turner) was transmitted to the Secretary of the Interior with certain explanations and recommendations. On February 19, 1910, Frank Pierce, Assistant Secretary of the Interior, advised the Commissioner of Indian Affairs and directed the form to be used in preparing the patent, and used the following language:

"In the matter of the issuance of deeds of certain lots in the town of Vian, Cherokee Nation, Oklahoma, originally scheduled to Clarence W. Turner and Pleasant N. Blackstone, known as Blackstone & Co., concerning which you wrote the Department under date of January 25, 1910, you are authorized to direct the Commissioner to the Five Civilized Tribes to make the deeds to 'Clarence W. Turner, as, and in the capacity of, surviving partner of the firm composed of said Clarence W. Turner and Pleasant N. Blackstone (now deceased) doing business under the firm name and style of Blackstone & Company'. This is believed to be preferable to the plan suggested in your letter. It conveys the land to the surviving partner as

such, charged with the usual trust imposed on one in that capacity. It avoids the anomaly of conveying an undivided interest to a person not living at the time of conveyance."

On April 15, 1910, the heirs of Blackstone filed a motion for a reconsideration of order dated February 19, 1910. Very extensive briefs were filed on both sides, and the cause was assigned for oral argument before Frank Pierce, First Assistant Secretary, and he rendered his decision herein on July 29, 1910. The decision was quite lengthy and recited the contention of the heirs of Blackstone, to wit: That Turner and Blackstone were tenants in common and did not own the improvements on the town lots out of which the preference right to purchase accrued as a partnership, therefore the deed should be executed to Turner and to the heirs of Blackstone, an undivided one-half interest in each. The assistant secretary, after reviewing the case, stated as follows:

"The record presented admits but one conclusion, and that is that the improvements were the property of Blackstone & Company. The preference right to purchase the lots, therefore, resided not in Turner and Blackstone as individual persons, but in the partnership as an entity—a person."

And again the assistant secretary stated:

"And as such 'person' the property stands scheduled to the firm at the full appraised value; thus clearly evincing the fact that Blackstone, an Indian, who would have been entitled to take his share of the property at one-half the appraised value, was not merely a tenant in common."

The assistant secretary then wrote:

"I see no reason to modify the order of February 19, 1910."

The answer and the evidence supplied the reason for scheduling the lots to the surviving partner. This court in the former opinion stated the record was silent upon that question.

The law of the case, announced upon a demurrer to a petition, cannot prevent the pleading of a different state of facts in the answer that would make the law as announced upon the demurrer inapplicable.

The next question presented is that the court erred in holding that the property in controversy was the property of Blackstone & Co. This raises a question of fact, and the exact question decided by the department that issued the deed. John G. Wright, the Commissioner to the Five Civilized Tribes, first had under consideration this fact, and decided that the improvements placed upon the lots were partnership property of Blackstone & Co., but decided the lots should be scheduled to the parties as individuals. The Commissioner of Indian Affairs likewise held the improvements were partnership property, but reversed the holding that the lots should be scheduled to the individuals, but held they should be scheduled to the partnership. The matter was then considered by Frank Pierce, First Assistant Secretary, and he likewise held that the property was partnership property and the lots should be so scheduled. The rule announced in Marquez v. Frisbie, 101 U. S. 473, stated:

"The decisions of the officers of the Land Department, made within the scope of their authority, on questions of this kind, are in general conclusive everywhere, except when considered by way of appeal within that department; and that as to the facts on which their decision is based, in the absence of fraud or mistake, that decision is conclusive even in courts of justice when the title afterwards comes in question."

Supporting this decision is the case of Heath v. Wallace, 138 U. S. 572; Colbert v. Patterson, 83 Okla. 212, 201 Pac. 256; Ross v. Stewart, 25 Okla. 611, 106 Pac. 870, affirmed 227 U. S. 530.

This question of fact was likewise decided in the same way by the trial court in this case. An examination of the evidence fails to disclose that this finding is clearly against the weight of the evidence if we should consider the findings of the department not binding.

It is next contended that Turner had no right as surviving partner to convey the land, and there was no competent evidence that it was sold for the purpose of applying the proceeds on the debts of the partnership.

The rule in 20 R. C. L. 994, is as follows:

"Since real estate belonging to a partnership is considered as personalty for the purpose of paying the debts of a firm and the settlement of its affairs, a surviving partner, as between himself and the heirs of the deceased partner, has a right to sell the real estate belonging to the firm in the same manner as if it were personal estate. This right extends to all real estate of the partnership in whosesoever name the legal title may have been, when such sale is necessary for the purposes of paying and discharging the liabilities of the firm and settling the partnership accounts, including any balance due him. Although the surviving partner alone cannot transfer a legal title to partnership realty, a deed by him nevertheless will operate to transfer the equitable interest of the firm to the purchaser, who may then compel a conveyance from the heirs of the deceased partner."

The court in the instant case found this to be partnership property; second, that the

partnership was indebted; third, that the same was sold to pay the debts of the partnership, although the full purchase price was not paid. It was testified that what was paid was paid upon the account by the partnership firm. While the evidence is not very satisfactory, yet there is no evidence to the contrary, and we are unable to say that the findings of the court upon these questions are clearly against the weight of the evidence.

The heirs or a portion of them have disposed of their interest to James A. Smith and Milton Thompson and are asking that the title of Kennedy to an undivided one-half interest in the land be held in trust for them. Whether the title conveyed by Turner is sufficient to convey a legal title is unnecessary for us to determine, nor can the accounting between Turner and the administrator be determined for the reason Turner is not a party to this action, but the plaintiff Smith and Thompson and the heirs are not entitled under the facts to have whatever title is in Kennedy to be held in trust for them.

The judgment in so far as it is in conformity with this opinion is affirmed.

HARRISON, C. J., and JOHNSON, ELTING, and KENNAMER, JJ., concur.